IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MULTIPLE ENERGY TECHNOLOGIES, LLC,<br>   Plaintiff,<br><br>  v.<br><br>UNDER ARMOUR, INC.,<br>   Defendant. | 2:20-cv-664-NR |

## MEMORANDUM OPINION

**J. Nicholas Ranjan, United States District Judge**

  Under Armour moves to dismiss Count I (Lanham Act) and Count II (Sherman Act) of MET's amended complaint.[1] Applying the familiar standard of *Twombly*,[2] the Court grants the motion, but dismisses both counts without prejudice and with leave for MET to amend.

  As to the Lanham Act claim, Under Armour argues that MET fails to plead that Under Armour's alleged false advertising was the proximate cause of its harm, given that MET is not a direct competitor of Under Armour (*i.e.*, a retail or wholesale seller), but a component supplier of bioceramic powder. As to the Sherman Act claim, Under Armour similarly argues that, because MET is not a direct competitor of Under Armour, and has not clearly articulated the contours of the relevant market, MET has not sufficiently pled an appropriate antitrust market, antitrust injury, or

---

[1] The Court writes for the benefit of the parties, who are familiar with the factual and procedural background, as well as the allegations in the amended complaint.

[2] A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the complaint." *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 113 (W.D. Pa. 2019) (Stickman, J.) (citation omitted). Such a motion "may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that [the] plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

antitrust standing. In response, MET mainly argues that the amended complaint sufficiently pleads that it is a direct competitor and, further, adequately defines the relevant market of "Clothing Containing Recovery Enhancing Bioceramics," or "CCREB."

After carefully considering the parties' arguments and upon a close review of the amended complaint, the Court agrees with Under Armour, in two respects.

First, as pled, it is not clear from MET's allegations that it competes directly with Under Armour. For example, Paragraph 9 of the amended complaint pleads that "MET *has also sold* garments, sleeves and other products containing its bioceramic powder, which include the printed Redwave™ or Biopower mark, directly to consumers." ECF 39, ¶ 9 (emphasis added). This allegation does not make clear when MET sold these products (Does it currently sell them? Did it sell them during the relevant time periods?). MET also does not make clear that the products sold are products that fall within the CCREB market, rather than other products containing bioceramic powder.

Paragraph 19 of the amended complaint is a little clearer, but still stops short of what is necessary to show that MET's claims are plausible. That paragraph pleads that "MET manufactures CCREB that are sold directly to consumers and intermediaries. Those sales continue to this day." ECF 39, ¶ 19. Here, while MET does plead that sales "continue to this day," the framing of this allegation is confusing. MET says that it "manufactures CCREB that are sold." But does MET manufacture CCREB and then some other entity sells it? Or does MET sell the CCREB that it manufactures? All of that is significant in determining whether MET actively competes with Under Armour in selling CCREB to intermediaries and consumers, as well as whether Under Armour's alleged conduct here was aimed at inflicting harm

to competition.³ Indeed, all of Under Armour's arguments for dismissal turn in one way or the other on whether MET is a direct competitor. If nothing else, then, clearer allegations on this point could materially change the parties' arguments regarding dismissal and impact the scope of relevant discovery if MET's claims survive. Thus, if MET intends to proceed under the theory that it is a direct competitor of Under Armour, it should plead as much more clearly.⁴

Second, the allegations in the amended complaint about the relevant market are not sufficiently pled. *See Bishop v. GNC Franchising LLC*, 403 F. Supp. 2d 411, 419 (W.D. Pa. 2005) ("Courts may dismiss Section 2 claims for failure to plead a valid relevant market."), *aff'd*, 248 F. App'x 298 (3d Cir. 2007). MET asserts that the relevant market is CCREB, but it is unclear what clothing or type of clothing is part of that market. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand,

---

³ *See W. Penn Allegheny Health Sys., Inc. v. UPMC,* 627 F.3d 85, 102 (3d Cir. 2010) ("[T]he class of plaintiffs capable of satisfying the antitrust-injury requirement is limited to consumers and competitors in the restrained market[.]").

⁴ The Court acknowledges that MET alternatively argues that its claims can survive even if it is not a direct competitor of Under Armour. That is, MET contends that, even if it is not a competitor, it can state a Lanham Act claim because it suffered "reputational injury" flowing from Under Armour's disparagement, and a Sherman Act claim because its injury was "inextricably intertwined" with Under Armour's alleged anticompetitive activity.

At this stage, however, MET's allegations regarding the nature of its relationship to Under Armour are too ambiguous, and MET does not explicitly plead these legal theories in the alternative. Thus, because MET has suggested, both in its briefs and at oral argument, that it can establish that it competes directly with Under Armour, the Court finds that the better course is to reserve judgment on MET's alternative theories at this time. If, after MET pleads the nature of its business with more specificity, it becomes clear that MET does not compete directly with Under Armour but was impacted in some other way, the Court can then address whether MET has stated a claim on that basis.

or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted."); *cf. Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d 963, 971 (W.D. Tenn. 2004) ("Plaintiff's attempted definition of the relevant product market is insufficient and fatally vague … Without a more specific definition and accounting of the brands and suppliers to be included in the relevant market, the Court cannot determine the boundaries of the market. It is thus unable to assess Defendants' market power, as discussed further below, which is one of the purposes of defining a relevant market."); *Prescient Med. Holdings, LLC v. Lab. Corporaton of Am. Holdings*, No. 18-600, 2019 WL 635405, at *6 (D. Del. Feb. 14, 2019) ("The Complaint here describes the relevant product market as 'laboratory services,' but does not identify which laboratory services are a part of the relevant product market, let alone which services are reasonably interchangeable.").

The amended complaint also pleads nothing about the cross-elasticity of demand of the products in the relevant market, which is necessary. *See Queen City Pizza, Inc.,* 124 F.3d at 436; *see also Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 391 (S.D.N.Y. 1993) ("If a complaint fails to allege … pertinent facts relating to cross-elasticity of demand, as the complaint here fails to do, a court may grant a Rule 12(b)(6) motion.").

The Court acknowledges that defining a relevant market is a fact-intensive exercise that often must be refined through discovery. But MET has not pled the bare minimum required to define the contours of the relevant market. Given that many other aspects of this case turn on how the relevant product is defined (*e.g.*, Under Armour's market power; the impact on competition; antitrust injury; antitrust standing), the Court finds that MET must plead the relevant market with greater specificity.

For these reasons, Under Armour's motion is granted, and Counts I and II are dismissed without prejudice. Because MET's counsel indicated at oral argument that MET can plead more detail as to the deficiencies outlined above, the Court finds that amendment would not be futile and thus grants MET leave to amend. *See Farrar v. McNesby*, 639 F. App'x 903, 907 (3d Cir. 2016) ("Leave to amend should be granted unless amendment is futile or inequitable."). MET's second amended complaint is due by **March 10, 2021**. An appropriate order follows.

DATE: March 3, 2021                                     BY THE COURT:

                                                        /s/ *J. Nicholas Ranjan*
                                                        United States District Judge