IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MULTIPLE ENERGY TECHNOLOGIES, LLC, | ) ) ) | 2:20-cv-664-NR |
| Plaintiff | ) ) ) | |
| v. | ) ) | |
| UNDER ARMOUR, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

### J. Nicholas Ranjan, United States District Judge

Defendant Under Armour moves to dismiss M.E.T.'s Sherman Act claims.[1] This Court has previously granted two of Under Armour's motions to dismiss. ECF 54; 74. Now, in response to M.E.T.'s Third Amended Complaint, Under Armour argues improper market definition and insufficient evidence of market power. ECF 79, pp. 3-4, 23. After carefully considering the parties' arguments and the relevant caselaw, this time the Court will deny the motion.

## DISCUSSION & ANALYSIS

Initially, the Court is guided by the standard of review. Under Armour argues that a "somewhat more elaborate pleading" standard is appropriate because of the expenses associated with antitrust discovery. ECF 79, pp. 9-10. But the Third Circuit, interpreting *Twombly*, has squarely held that antitrust cases do not require a heightened pleading standard. *West Penn Allegheny Health Syst., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (overruling a district court opinion that had opined

---

[1] The Court has described the factual background of this case in two prior opinions, and so will not repeat it. *Multiple Energy Techs., LLC v. Under Armour, Inc.*, No. 20-664, 2021 WL 807722 (W.D. Pa. Mar. 3, 2021) (Ranjan, J.); *Multiple Energy Techs., LLC v. Under Armour, Inc.*, No. 20-664, 2021 WL 2661827 (W.D. Pa. June 29, 2021) (Ranjan, J.).

"that judges presiding over antitrust and other complex cases must act as gatekeepers and must subject pleadings in such cases to heightened scrutiny"). Though an antitrust claim is complex and will thus require more factual allegations than a simpler claim, the Court explained that "this does not mean that *Twombly's* plausibility standard functions more like a probability requirement" in such cases. *Id.*

Indeed, courts generally recognize that "[i]n antitrust cases[,] dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Premier Comp Solutions LLC v. UPMC*, 163 F. Supp. 3d 268, 275 (W.D. Pa. 2016) (Cercone, J.) (citing *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746 (1976)). This is especially true when market definition is at issue. *Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 337 (3d Cir. 2018) ("[A]bsent [] obvious oversights, courts are cautious before dismissing [a complaint] for failure to define a relevant market."). Courts generally consider "the determination of a relevant product market or submarket…[to be] a highly factual one best allocated to the trier of fact." *Fineman v. Armstrong World Indus. Inc.*, 980 F.2d 171, 199 (3d Cir. 1992). That's because "in most cases, proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers[.]" *Queen City Pizza*, 124 F.3d 430, 436 (3d Cir. 1997).

Therefore, the Court will construe M.E.T.'s complaint under the ordinary *Twombly* standard, as is appropriate at this stage of the proceeding. *Premier Comp*, 163 F. Supp. 3d at 275.

## I.   Market definition requirements

In its last order granting dismissal, this Court explained that M.E.T. must meet a minimum standard to survive a motion to dismiss. "First, it need[s] to say what products are in the market, with enough specificity to put Under Armour on notice of at least the rough bounds of the market. Second, and more importantly, it

need[s] to allege that consumers consider the products in the market to be 'reasonably interchangeable' *with the other products in the market*."  ECF 74, p. 3 (emphasis in original).  In this latest attempt, M.E.T. has pled sufficient facts to meet both of these requirements and proceed with its claim.

### A.    List of products included

The Third Amended Complaint delineates the CCREB market as: "tank tops, sleeveless shirts, t-shirts, long sleeve shirts, shorts, pants, leggings, joggers, sweatpants, sleeves, pajamas and sleepwear containing recovery-enhancing bioceramics."  ECF 77, ¶14.  M.E.T. plausibly alleges interchangeability by pointing to the recovery-promoting bioceramic technology that customers seek.  *Id.* at ¶¶15, 18; *FTC v. Facebook*, No. 20-3590, 2020 WL 2643627, at *11 (D.D.C. June 28, 2021) ("All Plaintiff must do at this stage is provide a plausible explanation as to why users would not switch[.]").

M.E.T.'s list of products appears comprehensive and specific, unlike the lists was previously pled in its prior complaints.  While discovery could alter the contours of the market, at this pleading stage, M.E.T. has done enough to place Under Armour on notice and plead a plausible market for antitrust purposes.

### B.    Cross-elasticity of demand

M.E.T.'s latest complaint also pleads high cross-elasticity of demand, as the Court required.  It alleges that because of "the science underlying the [CCREB] technology…many different products within the market promote recovery in the same regions or locations of the body."  ECF 77, ¶20.  It also alleges that "[i]ndeed, wearing a product that contains recovery-enhancing bioceramics on one part of your body will provide benefits for the whole body."  *Id.*  To support these claims, it points to product reviews in which "at least one purchaser…used the sleep shirt as a regular top."  ECF 77, ¶21.  Because M.E.T. has pled technological explanation for this cross-

elasticity, and because the Court must accept all factual allegations as true at this stage, this element is met.

To be sure, more technical and economic data to support these allegations would of course be required as the case progresses through discovery, but these allegations are sufficient at this stage. *See, e.g., Mylan Pharmaceuticals Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 436 (3d Cir. 2016) (granting summary judgment where evidence showed "a consensus among dermatologists that all oral tetracyclines treat acne with similar effectiveness and so are interchangeable for that purpose" and "health insurers and other managed care providers encouraged the widespread substitution of numerous other oral tetracyclines for Doryx"); *Columbia Metal Culvert Co., Inc. v. Kaiser Aluminum & Chemical Corp.*, 579 F.2d 20, 29 (3d Cir. 1978) (JMOL reversed where "credible testimony was produced to show that there is considerable difference among the physical properties of concrete, aluminum and steel").

## II.    Market power

Under Armour also moves to dismiss the antitrust claim on the basis of M.E.T.'s failure to plead Under Armour's market power. The Court finds, however, that M.E.T. has met its burden.

M.E.T. alleges that Under Armour has market power because, "[u]pon information and belief, Under Armour is responsible for at least 60% of sales in the market for CCREB in the United States, and perhaps as much as 80% or more[.]" ECF 77, ¶24. To establish antitrust liability, courts "generally require a plaintiff...to show that Defendants maintained a market share significantly larger than 55%[.]" *Mylan*, 838 F.3d at 437 (quotation omitted). Thus, the share M.E.T. pleads is sufficient to state a claim.

Additionally, M.E.T. alleges other facts that support the inference that Under Armour is a powerful player in the relevant market. The Third Circuit has explained

4

that a Section 2 "complaint must allege 'something more' than mere market share…[n]o single factor is dispositive." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007) (citation omitted). "[F]actors such as significant market share coupled with anticompetitive practices, barriers to entry, the strength of competition, the probable development of the industry, and the elasticity of consumer demand may be considered." *Id.* at 18. Here, M.E.T.'s complaint references the patent portfolios and proprietary processes that M.E.T. and Under Armour have both developed that enable integration of bioceramics into textiles. ECF 77, ¶¶11, 13. "Technological obstacles" are one barrier to entry "that prevent new competition from entering a market in response to a monopolist's supracompetitive prices." *Broadcom* 501 F.3d at 307.

M.E.T. also alleges anticompetitive conduct by Under Armour—allegations of a nature that other courts have found provide an inference of market power. *E.g., West Penn*, 627 F.3d at 109 (providing examples of anticompetitive conduct, including "a hospital's coercing providers not to refer patients to a rival…and making false statements about a rival to potential investors and customers"). Here, M.E.T. provides details alleging that Under Armour successfully 'strong armed' potential partners into boycotting M.E.T. ECF 77, § G. What's more, it alleges that Under Armour gained a competitive advantage by falsely claiming that Celliant products were FDA approved. *Id.* at § F. Finally, M.E.T. alleges that Under Armour was able to prevent Hologenix from licensing its Celliant technology to large potential competitors such as Nike and Adidas. *Id.* at ¶81. Taken together, these additional factual allegations make M.E.T.'s market power allegations plausible.

## <u>CONCLUSION</u>

The Court concludes that M.E.T. has stated a plausible antitrust claim, but also notes that the support (at least as pled) for many of the allegations remains thin. As such, Under Armour's motion to dismiss is **DENIED**, but without prejudice to Under Armour raising these same arguments on a more developed record at summary judgment.  An appropriate order follows.

DATE:  February 4, 2022                                        BY THE COURT:


                                                                              /s/ *J. Nicholas Ranjan*
                                                                              United States District Judge