IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MULTIPLE ENERGY TECHNOLOGIES, LLC, | Case Number: 2:20-cv-664 |
| Plaintiff, | Judge J. Nicholas Ranjan |
| v. | |
| UNDER ARMOUR, INC., | |
| Defendant. | |

**BRIEF IN SUPPORT OF MOTION TO COMPEL**

Under Armour, Inc. ("Under Armour") submits this Brief in Support of its Motion to Compel regarding the unresolved discovery disputes referenced in the Special Master's November 8, 2022 Report and Recommendation No. 1 (ECF No. 163).

## INTRODUCTION

Multiple Energy Technologies, LLC ("MET") asserts three principal claims against Under Armour in this action. First, MET contends that Under Armour allegedly destroyed MET's business by falsely advertising products containing the bioceramic powder of MET's competitor, Hologenix. Second, MET contends that it has been "largely foreclosed" from the so-called CCREB marketplace by way of an industry-wide "boycott" of MET enforced by Under Armour's alleged "strong-arming" of MET's existing and prospective business partners into refusing to do business with MET. Third, MET claims that Under Armour improperly disclosed MET's trade secrets to Hologenix in an effort to assist Hologenix in the manufacture of competing products.

Under Armour denies all of MET's claims and seeks discovery to refute the very claims that MET has itself placed at issue by initiating this action. For instance, Under Armour has

requested the production of formal written discovery and deposition transcripts from two other lawsuits (also initiated by MET) in which MET alleges that false advertising *by other entities and individuals* – not by Under Armour – caused fatal harm to MET's business.[1] Those cases involve the same counsel for MET, the same claims, and many of the same witnesses as this case. Thus, sworn statements made in written discovery responses and during depositions in those cases are relevant here and certainly fair game for discovery.[2] Yet, despite Under Armour's repeated requests, MET has refused to produce a *single* discovery response or deposition transcript from either case.

Under Armour has similarly requested records demonstrating that, despite MET's claims of a "boycott" and complete "foreclosure" from the marketplace, MET has engaged for many years in negotiations with multiple companies regarding the development of products containing MET's bioceramic powder (without any apparent interference from Under Armour). MET's own witnesses identified those companies during their depositions. Yet, in response to Under Armour's specific and targeted requests for any agreements with, or records of sales to, those companies, MET responded with the non-sequitur that it "has already produced documents sufficient to show MET's relationship" with those companies.

Similarly, after one of MET's witnesses testified about the purported trade secrets that Under Armour allegedly misappropriated, Under Armour asked MET for permission to disclose that testimony to the Under Armour employee with whom those trade secrets were allegedly

---

[1] Those cases are Multiple Energy Techs., LLC v. Hologenix, LLC, No. 2:19-cv-1483 (C.D. Cal 2019) (the "Hologenix Litigation") and Multiple Energy Techs., LLC v. Casden, No. 2:21-cv-1149 (C.D. Cal. 2021) (the "Casden Litigation").

[2] MET's express reliance on, and reference to, the Hologenix Litigation and the injunction issued there in MET's Third Amended Complaint in this action should dispel any notion to the contrary. See ECF No. 77 at ¶ 95.

shared.[3] Under Armour merely seeks to test the veracity of MET's trade secret misappropriation claims by having the person (Dr. Matt Trexler) to whom those trade secrets were allegedly disclosed address those allegations. If those allegations had any validity, MET should have no issue with the disclosure of this testimony, but MET illogically refuses to permit the limited disclosure of this information to Under Armour personnel. Under Armour thus is left in the position of an MET witness claiming "this is what MET disclosed to Matt Trexler," but Under Armour having no ability to go to Matt Trexler to confer with him about what MET claims was already voluntarily disclosed to him and to Under Armour.

Finally, Stu Williams – an owner and principal investor in MET – has refused to respond to a narrowly tailored document subpoena that Under Armour issued nearly two years ago. That issue was raised previously with the Court, which ordered Mr. Williams to conduct a preliminary, "manual" search of his files, for the purpose of assisting the parties in narrowing the scope of an ESI search. After failing to produce any non-ESI documents on the grounds that a "manual" search was "not feasible," Mr. Williams now insists that Under Armour agree to pay more than $70,000 before he complies with the subpoena. Mr. Williams's position is unreasonable and contrary to well-established case law from courts in the Third Circuit.

Under Armour is entitled to discovery to support its defenses. Under Armour submits that Court intervention is required in light of MET's continuing refusal to disclose basic information highly relevant to the claims to which it has subjected Under Armour.

**BACKGROUND**

Under Armour served Requests for Production on MET on July 21, 2022, August 1, 2022, and August 25, 2022. The first of those requests pertains to discovery from the Hologenix

---

[3] Under Armour needs permission to disclose that testimony because it has been designated "Confidential Attorney Eyes Only" under the protective order in this case.

Litigation.  In the Hologenix Litigation, MET alleged, *inter alia*, that MET's business suffered irreparable harm as a result of allegedly false statements *made by Hologenix* about its competing bioceramic powder, Celliant.  See, e.g., Hologenix Litigation ECF No. 1 at ¶¶ 117-126.  Notably, MET alleged that Hologenix's purported false advertising campaign caused Under Armour and another former MET customer, American Textile, to switch to Hologenix after working with MET for years.  Id. at ¶ 87.  Now, in this case, MET claims – inconsistently – that it suffered irreparable harm because of allegedly false statements that *Under Armour* made about Celliant, including the loss of its business relationship with American Textile.  See, e.g., ECF No. 77 at ¶ 106 ("But for Under Armour's misrepresentations and deceptive advertising, MET would have continued its long term supply arrangement with American Textile…").

Because MET's allegations in the Hologenix Litigation overlap substantially with (and in many instances directly contradict) MET's claims against Under Armour here, Under Armour initially requested the production of all written discovery – including document productions – and deposition transcripts from the Hologenix Litigation.  On July 8, 2022, the Court denied that request because "[f]ull production would involve tens of thousands of pages."  See ECF No. 142 at 2.  The Court, however, permitted Under Armour to make more narrowly tailored requests in relation to the Hologenix Litigation.

Under Armour followed the Court's directive by eliminating entirely the request for the underlying documents produced in the Hologenix Litigation (thereby eliminating MET's and the Court's principal objection to the prior request).  On August 10, 2022, MET served its responses, in which it maintained its previous objections.  See **Exhibit A**.  On November 1, 2022, following a conference with the Special Master, Under Armour further narrowed its request to only written interrogatories and requests for admission (with corresponding responses) and certain deposition

4

transcripts.  See **Exhibit B**.  However, MET has not responded to that email or produced a single responsive document to date.

In its next set of document requests, Under Armour similarly and narrowly sought the production of the deposition transcripts and formal written discovery (excluding document productions) from another parallel case – the Casden Litigation.  Seth Casden is Hologenix's founder and principal.  The Casden Litigation involves substantially similar claims by MET, again advanced by the same lawyers representing MET here; namely, that MET suffered irreparable harm as a result of allegedly false statements that Casden made about Celliant.  MET served its objections and responses to these requests on August 15, 2022 and, again, has refused to produce a single responsive document.  See **Exhibit C**.

Under Armour's final set of document requests sought, *inter alia*: (1) documents and communications reflecting negotiations or agreements between MET and companies that (according to MET's witnesses) had actual or prospective business relationships with MET; (2) records of any sales by MET to those companies; and (3) specific documents referenced during the depositions of MET's witnesses.  MET served its objections and responses on September 26, 2022.  See **Exhibit D**.  MET's responses were evasive and, in some cases, nonsensical.[4]  While MET has since produced a limited number of documents responsive to a few of the requests, MET's responses otherwise remain deficient.

Under Armour also seeks to disclose to Under Armour's non-attorney witness, Dr. Trexler, limited portions of Alan Letton's deposition transcript that MET has designated

---

[4] Aside from vaguely stating that it "has already produced relevant, non-privileged documents sufficient to show MET's relationship with" certain companies in response to requests for specific documents, MET misleadingly reworded and then objected to several requests on grounds that the requests sought "'documents reflecting and/or embodying' 'any potential or actual business relationship between MET'" and those companies.  However, those requests very clearly seek "documents reflecting and/or embodying *communications* between MET" and those companies regarding a potential or actual business relationship.

"Confidential – Attorney Eyes Only." Dr. Trexler is Under Armour's Principal of Technology Validation. Dr. Letton is MET's former CEO. Under Armour wishes to disclose portions of Dr. Letton's transcript discussing the trade secrets that MET purportedly shared with Under Armour so that Dr. Trexler and Under Armour can knowledgeably respond to Dr. Letton's testimony on that issue. Despite the fact that MET itself contends that most of the AEO-designated information from the Letton deposition *already was shared with Dr. Trexler*, MET refused Under Armour's informal request to share this information with Dr. Trexler. On November 14, 2022, Under Armour made a formal request under the protective order for MET to change these designations from "Confidential – Attorney Eyes Only" to "Confidential," but MET has not responded.

Finally, Under Armour seeks the Court's intervention on two principal issues relating to the subpoena to Stu Williams. Under Armour requests an order compelling Mr. Williams to produce documents responsive to the subpoena. Under Armour has yet to receive a single document in response to the subpoena and has spent considerable resources attempting to enforce the subpoena over the last eighteen months. Under Armour also requests the denial of Mr. Williams's inflated demand for costs relating to compliance with the subpoena. Specifically, Mr. Williams's insistence that Under Armour pay for Mr. Williams's attorneys to conduct a privilege review (which comprises $66,000 of the $76,000 in purported costs that Mr. Williams claims is required for him to comply with the subpoena) is simply wrong. Williams is a part-owner of MET, and Under Armour submits that Williams's position constitutes a transparent effort to impose unreasonable expense on a litigation opponent.

## LIST OF ISSUES

In addition to the Letton and Williams issues noted above, the following specific

discovery requests are in dispute:

- Requests 1-4 in Under Armour's Sixth Request for Production;
- Requests 1-6 in Under Armour's Seventh Request for Production; and
- Requests 1-2, 4-6, 8-10, 12-18, and 25 in Under Armour's Eighth Request for Production.

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." See Fed. R. Civ. P. 26(b)(1); see also Wright & Miller, 8 *Federal Practice and Procedure* § 2001 ("prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged") and § 2007 (3d ed. 2011) (noting that "Rule 26(b) allows great freedom in discovery."). Under Fed. R. Civ. P. 37, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." See Fed. R. Civ. P. 37(a)(4).

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). "Once that initial burden is met, 'the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" Rudolf v. American International Group, Inc., No. 19-1468, 2022 WL 2757684, at *1 (W.D. Pa. July 14, 2022) (quoting In re Urethane Antitrust Litig., 261 F.R.D. 570, 573 (D. Kan. 2009)). "The person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is

overly broad, burdensome, oppressive, vague, or irrelevant is insufficient." Parisi v. State Farm Mut. Auto. Ins. Co., No. 3:16-179, 2017 WL 4403326, at *1 (W.D. Pa. Oct. 2, 2017).

With respect to a subpoena issued under Rule 45, in balancing the protections against a party's need for discovery and the general assumption that the complying party bears the costs of production, courts have used a multi-step inquiry to determine the equity of shifting costs: "(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance." Bell Inc. v. GE Lighting, LLC, No. 6:14-cv-00012, 2014 WL 1630754, at *12 (W.D. Va. Apr. 23, 2014) (quoting DeGeer v. Gillis, 755 F. Supp. 2d 909, 928-29 (N.D. Ill. 2010)). A non-party's fees incurred to conduct a privilege review of documents responsive to a subpoena are not subject to reimbursement under Fed. R. Civ. P. 45. See, e.g., Steward Health Care System LLC v. Blue Shield of Rhode Island, 2016 WL 8716426 (E.D. Pa. Nov. 4, 2016); Lefta Assocs. v. Hurley, No. 09-2487, 2011 WL 1793265 (M.D. Pa. May 11, 2011).

## ARGUMENT

A.  **Under Armour's Requests for Discovery from Prior Related, Parallel Litigation Are Narrow, Proportional, and Entirely Proper**

Under Armour seeks from MET any written interrogatories and requests for admission, the corresponding sworn responses, and deposition transcripts from the Hologenix Litigation and the Casden Litigation. Under Armour also seeks specific documents relating to specific allegations in the First Amended Complaint in the Casden Litigation.[5] Given the relevance of

---

[5] Under Armour seeks documents reflecting any alleged "efforts" by Casden to "convince partners, prospects, journalists and consumers that Celliant had received FDA approval or that the FDA had 'determined' that Celliant promoted certain health benefits" (as alleged in paragraph 6 of the First Amended Complaint in the Casden Litigation), and "any documents that constitute or embody the 'advertising' referenced in paragraph 85 of the FAC and the "advertisements" referenced in paragraph 89 of the First Amended Complaint in the Casden Litigation.

these documents and the minimal effort required by MET to produce them, Under Armour submits that an order compelling their production is warranted.

In determining whether discovery from a prior action is relevant and discoverable in a subsequent case, the question before the Court is not whether the cases involve identical claims or theories of liability, but, rather, whether there is sufficient similarity in subject matter from the earlier case to potentially bear on issues in the latter.  See United States v. Abbott Laboratories, No. 09-CV-4264, 2016 WL 4247429, at *5 (E.D. Pa. Aug. 11, 2016).  The party moving for production must demonstrate that the information sought could bear on some matter at issue in the case.  Id.; see also Inventio AG v. ThyssenKrupp Elevator Americas Corp., 662 F. Supp. 2d 375, 382-83 (D. Del. 2009) (granting motion to compel production of certain documents and deposition transcripts from prior action involving similar patents where movant made showing that requested discovery had bearing on claims or defenses in pending action).

Both the Hologenix Litigation and Casden Litigation are sufficiently similar to this action to warrant the production of discovery from those cases.  MET is represented by the same counsel in all three cases.  The crux of the Complaint in each case is that the Defendant in each case harmed MET's business by allegedly making false statements about Celliant.  Several of the same witnesses have testified, or will testify, in all three cases.  Written discovery exchanged in those cases is likely to include sworn statements regarding the allegedly false advertisements at issue, MET's competitors and customers, the amount of MET's alleged damages, and the

cause(s) of those alleged damages, all of which are relevant here.[6]

[REDACTED]

---

[6] Under Armour, of course, does not know the exact contents of these deposition transcripts or of the written discovery exchanged in the Hologenix Litigation and the Casden Litigation. But, contrary to MET's objections, Under Armour is not "indiscriminately seek[ing] information" that will impose an undue burden on MET. Under Armour fails to see how requests for limited categories of written discovery and specific deposition transcripts are at all burdensome or disproportionate, particularly in a federal antitrust lawsuit in which MET seeks millions and millions of dollars in damages and has subjected Under Armour to years of discovery.

[7] According to MET's Initial Disclosures, Blaney likely has "[i]nformation regarding Hologenix's business activities; claims and advertising of Celliant; claims and advertising by Under Armour of Celliant; communications internally and with third-parties, including Under Armour, about Celliant and Redwave; and agreement with Under Armour," while Cariquitan likely has "[i]nformation regarding Hologenix's advertising of claims regarding Celliant."

███████████████████████████████████████████████████████████████[8]

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████

Absent production of the written discovery exchanged and the deposition transcripts from the Hologenix and Casden cases, MET has a distinct advantage. MET can use those discovery responses and transcripts strategically in its questions of witnesses. Moreover, there is likely expert testimony in the Hologenix Litigation that attributes MET's purported harm to Hologenix's actions and, thus, conflicts with MET's theory of liability here. Under Armour is at a distinct disadvantage without that information. The potential prejudice to Under Armour significantly outweighs any purported burden on MET to produce these documents. The requested deposition transcripts and written discovery should be readily available and production of them should impose no burden on MET. MET argues that it is justified in withholding these documents because the issues in the three cases are not exactly identical and because some of the discovery involves Hologenix's counterclaims against MET. However, that discovery is not necessarily irrelevant here just because MET says so and, in any event, absolute identity of the claims and issues is not required. See Abbott Labs, 2016 WL 4247429, at *5.

MET's other objections to producing these documents do not withstand scrutiny. Any objection based on relevance is belied by MET's repeated references to the Hologenix Litigation in this case. For example, MET directly quotes the injunction entered in the Hologenix

---

[8] MET has not yet disclosed its expert witnesses. It would not be at all surprising if these same experts serve as MET experts here, or, if MET retains new experts on the same or similar topics, it would certainly be fair game for Under Armour to know whether, in those other actions, MET proffered expert opinions different than those it may offer here.

Litigation in its Third Amended Complaint here. See ECF No. 77 at ¶ 95. ███████
████████████████████████████████████████████████████████████
█████ ████████████████████████████████████████████████████
███████ MET's relevancy objection also rings hollow because MET sought from Under Armour (and Under Armour has reproduced) all of the documents that Under Armour produced pursuant to a subpoena in the Hologenix Litigation.

MET's purported confidentiality concerns are similarly unavailing. MET has indicated that it is withholding responsive materials that are subject to a protective order in the Hologenix Litigation. However, Under Armour has already obtained Hologenix's consent to waive those confidentiality designations and allow the documents to be produced, and Under Armour has represented to MET that, if any responsive documents are subject to a confidentiality designation from a person or entity other than MET or Hologenix, those documents could be withheld unless or until that other person or entity agrees to the production of such documents here. If MET itself has confidentiality concerns about the production to Under Armour of documents from the Hologenix or Casden actions, MET readily can avail itself of the protective order in place here.

We are only here debating discovery. The future admissibility or other use of these requested documents are topics for another day. Are these requests fairly within the broad scope of discovery? Yes. Has MET met its burden to shield these materials from discovery? No. MET has not articulated any compelling argument that justifies its refusal to produce a limited number of unquestionably relevant discovery requests and deposition transcripts from closely related litigation. The prejudice to Under Armour resulting from MET's withholding of these documents greatly outweighs any purported inconvenience to MET. For those reasons, Under Armour requests an order compelling the production of the requested written discovery and

deposition transcripts from the Hologenix Litigation and Casden Litigation.

**B.    MET's Responses to Under Armour's Eighth Request for Production Are Deficient**

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

Again, Under Armour's requests do not "indiscriminately" seek irrelevant information, as MET's objections repeatedly state. MET asserts very specific allegations of "foreclosure" from the relevant market. Under Armour has every right to test MET's allegations. Business records relating to MET's actual or potential business relationships during the period that Under Armour was purportedly leading a boycott against MET are highly relevant to, and possibly dispositive of, MET's Sherman Act claim. MET's boilerplate objections to these requests are meritless. Under Armour requests that the Court order MET to produce these records or, alternatively, issue

---

9 ███████████████████████████████████████████ MET also has not produced documents responsive to Requests 17, 18, and 25.

responses definitively stating that no such documents exist.

C.     **Letton Confidentiality Designations**

The protective order entered in this case provides, in relevant part, that "a Party shall not routinely designate material as "CONFIDENTIAL ATTORNEY EYES ONLY" without reasonable inquiry into whether it qualifies for such a designation." See ECF No. 29 at ¶ 4(b). MET's refusal to permit the disclosure of Dr. Letton's testimony designated as "Confidential – Attorney Eyes Only" to Dr. Trexler demonstrates MET's failure to reasonably inquire into whether this testimony qualifies for an AEO designation.



It is important to note that MET's theory is not that Under Armour surreptitiously stole these "secrets" from MET. Instead, MET's trade secret theory is that MET voluntarily disclosed these alleged "secrets" to Under Armour, but then Under Armour allegedly wrongly passed them along to Hologenix or otherwise wrongly utilized those secrets. Thus, here, MET's position is that it is entitled now to not disclose to Under Armour Letton's testimony about the alleged secrets that MET itself asserts (as the bases for its claims against Under Armour) that it already voluntarily and willingly disclosed to Under Armour. Under Armour should have the ability to confer with Dr. Trexler about the alleged trade secrets that Dr. Letton describes in order to prepare for further proceedings and eventually for trial. MET's

---

[10] Under Armour's letter to MET listing all of the transcript excerpts at issue is attached as **Exhibit H**.

14

concerns are unjustified and contrary to MET's own allegations that Under Armour already has the information in dispute.

Accordingly, MET requests that the Court enter an order changing the status of the deposition transcript excerpts outlined in Exhibit H from "Confidential – Attorney Eyes Only" to "Confidential" pursuant to section 7(b) of the protective order entered in this case.

### D.     Stu Williams Subpoena

Mr. Williams is an LLC member and thus part-owner of MET. See ECF 77 at ¶ 4. Under Armour issued to Mr. Williams in April 2021 a narrowly tailored subpoena for the production of documents. A copy of the operative version of that subpoena is attached as **Exhibit I**. Mr. Williams's counsel, Ryan James, agreed to accept service in February 2022. After accepting service, and after insisting that Under Armour provide him with ESI search terms, Mr. James issued a 12-page letter of boilerplate objections and refused to produce any documents.

Following a meet and confer session, Under Armour agreed to a reduction in the scope of the subpoena. Ultimately, the parties agreed on ESI search terms, but Mr. Williams persisted in his refusal to produce any documents absent an agreement by Under Armour to pay all fees and expenses incurred in complying with the subpoena. Under Armour raised the issue with the Court and, following a status conference, by order dated August 10, 2022, the Court ordered Mr. Williams to first conduct a good-faith, "manual" search of his relevant hard copy and electronic files. See ECF No. 147. The results of that "manual" search were to assist the parties in their efforts to continue narrowing the list of ESI search terms. In response to that Order, Mr. James submitted a Declaration seeking $76,096.70, which includes the cost for Mr. James's firm to conduct a privilege review, plus a recurring monthly charge of $1,650.00 per month, for the

estimated cost for Mr. Williams to comply with the subpoena. See ECF No. 149. Mr. James subsequently reported that the Court-ordered manual search is "not feasible" and, to date, still has not produced a single document in response to the subpoena. See ECF No. 152.[11] Mr. James has further rejected every request by Under Armour to assist in narrowing those terms, even refusing to identify which proposed search terms he claims to generate too many hits.

Under Armour seeks an order compelling Mr. Williams to respond to the subpoena. Under Armour has made it clear that it is willing to reimburse Mr. Williams's reasonable administrative expenses (e.g., copying costs) incurred in complying with the subpoena in accordance with Rule 45. However, Under Armour is under no obligation to pay for Mr. James to conduct a privilege review. Any purported privilege belongs to MET, Under Armour's litigation opponent here, not to Mr. Williams.[12] The Eastern and Middle Districts of Pennsylvania addressed this very issue in Steward Health Care System LLC v. Blue Shield of Rhode Island, 2016 WL 8716426 (E.D. Pa. Nov. 4, 2016) and Lefta Assocs. v. Hurley, No. 09-2487, 2011 WL 1793265 (M.D. Pa. May 11, 2011), respectively. In Steward, the Court explained:

---

[11] The proffered explanation was that Williams's law firm moved records from Outlook to Enterprise Vault, an electronic records storage program. Williams thus claimed that a manual search *of Outlook* was not feasible. The Declaration notably says nothing about the "feasibility" of conducting a search of those records in Enterprise Vault. The undersigned's law firm uses Outlook and Enterprise Vault too. Records moved to Enterprise Vault are searchable in much the way that records in Outlook are searchable.

[12] Williams is a lawyer, but it is beyond dispute that Williams is a significant investor in and principal of MET. Accordingly, like any other investor in an enterprise, Williams logically has records related to the decision to invest in the enterprise, information about the performance of the enterprise, the value of the investment, and possibly efforts to sell the business or the investor's stake. An investor cannot immunize such discoverable material merely because the investor also claims to have performed legal work for the business. See Rice, Paul, 1 *Attorney Client Privilege in the U.S.* § 7.31, *Business Associate* (2022) ("Courts … have been unwilling to presume that consultations between business partners, one of whom is an attorney, were for the purpose of legal advice.") (citing U.S. v. Rosenstein, 474 F.2d 705 (2d Cir. 1973); Lowy v. C.I.R., 262 F.2d 809 (2d Cir. 1959)).

>It is clear from the facts, despite what it has alleged, that [the non-party's] attorneys' fees were incurred as a result of its own desire to check for privileged and confidential documents. *These types of attorneys' fees are not subject to reimbursement under Rule 45*, as explained by the Court in <u>Lefta</u>:
>
>>we cannot find at this time that the bank, as movant, has carried its burden of showing that this is an instance in which '[a] nonparty's legal fees, especially where the work benefits the requesting party, [are properly] considered a cost of compliance' subject to reimbursement. <u>In re Automotive</u>, 229 F.R.D. at 496. Simply put, the bank has not shown that these legal fees directly related to work which benefitted the requesting party. Quite the contrary, these fees appear largely related to efforts by the bank to protect its own interests in connection with its compliance with the subpoena, by independently reviewing these documents itself to determine claims of privilege it might assert. Indeed, in this setting, where the bank concedes that this attorney time was spent in large measure on a privilege review by the bank, it seems that the review was done at the bank's instance to protect the bank's legal rights in connection with this compelled production.
>
>2011 WL 1793265, at *4 (citations omitted). Other courts have come to similar conclusions. See <u>McGraw</u>, 302 F.R.D. at 536 ("[T]he Court is skeptical that services provided by an attorney to a non-party for the non-party's sole benefit and peace of mind can be counted as expenses.") (internal citations and quotations omitted); <u>G & E</u>, 2016 WL 1258458, at *6 (finding that the third party's attorneys' fees for its laborious document review process were not compensable).

<u>Steward Health Care System LLC v. Blue Shield of Rhode Island</u>, 2016 WL 8716426 (E.D. Pa. Nov. 4, 2016) (emphasis added) (quoting <u>Lefta Assocs. v. Hurley</u>, No. 09-2487, 2011 WL 1793265 (M.D. Pa. May 11, 2011)).  Mr. Williams's interest in the outcome of this litigation further weighs against the shifting of compliance-related costs to Under Armour.  See <u>Bell</u>, 2014 WL 1630754, at *13.

Accordingly, Under Armour requests that the Court issue an order (1) compelling Mr. Williams to respond to the subpoena; and (2) denying Mr. Williams's request for Under Armour to pay the costs associated with a privilege review of any responsive documents.

## CONCLUSION

Based on the foregoing, Under Armour requests that the Court grant Under Armour's Motion to Compel and order MET to serve supplemental responses to the foregoing discovery requests as set forth in the attached proposed order.

Dated: November 30, 2022                Respectfully submitted,

/s/ Kevin P. Allen
Kevin P. Allen
kpallen@duanemorris.com

Michael P. Pest
mppest@duanemorris.com

Duane Morris, LLP
625 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
(412) 497-1000
(412) 497-1001 (facsimile)

*Counsel for Under Armour, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on November 30, 2022, the foregoing Brief in Support of Motion to Compel was filed via the electronic filing/service system of the United States District Court for the Western District of Pennsylvania, which will send notification of such filing to the following:

Thomas B. Fiddler
White and Williams, LLP
1650 Market Street
One Liberty Place - Suite 1800
Philadelphia, PA 19103
fiddlert@whiteandwilliams.com

Thomas E. Butler
Nicole A. Sullivan
White and Williams, LLP
7 Times Square, Suite 2900
New York, NY 10036-6524
butlert@whiteandwilliams.com
sullivann@whiteandwilliams.com

*Counsel for Multiple Energy Technologies, LLC*

Ryan James
Tucker Arensberg
1500 One PPG Place
Pittsburgh, PA 15222
rjames@tuckerlaw.com

*Counsel for Stu Williams*

/s/ Kevin P. Allen
Kevin P. Allen