IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MULTIPLE ENERGY TECHNOLOGIES, LLC, | ) ) ) ) |
| Plaintiff | ) ) 2:20-CV-664-NR ) |
| v. | ) ) ) |
| UNDER ARMOUR, INC., | ) ) ) |
| Defendant. | ) |

**MEMORANDUM ORDER ADOPTING AND MODIFYING SPECIAL MASTER'S REPORT AND RECOMMENDATION**

Special Master George Bibikos has submitted a comprehensive Report & Recommendation regarding discovery disputes primarily related to privilege issues. ECF 216. Under Armour, MET, and non-party Stuart Williams filed objections. ECF 221; ECF 222; ECF 225. Under Armour and MET filed responses and replies. ECF 228; ECF 229; ECF 232; ECF 233. After reviewing R&R No. 3, the entire record, the parties' briefing, and certain material documents at issue, and on a *de novo* review, the Court hereby adopts, in part, the R&R with certain modifications to account for the parties' objections, as described below.

**FACTUAL & PROCEDURAL BACKGROUND**

The parties are familiar with the facts underlying this action, and the Court will not repeat them here. Relevant to the instant objections, the Special Master issued Report and Recommendation No. 2, which resolved discovery issues related to a subpoena that Under Armour issued to non-party Stuart Williams. ECF 187. The Court adopted R&R No. 2 with one modification, which is not at issue here. ECF 192.

After the Court adopted R&R No. 2, the parties raised additional disputes related to the subpoena with the Special Master. ECF 216, p. 2. Specifically, Under

1

Armour challenged the sufficiency of Mr. Williams's production, privilege log, and assertions of attorney-client privilege and the work-product protection. *Id.*

After speaking with the parties, reviewing information, and performing an *in camera* review of the documents at issue, the Special Master issued the report and recommendation now at issue. ECF 216. The Special Master recommended that the Court: "(a) order Mr. Williams to produce certain documents to which privilege or work-product protections either never attached or have been waived; and (b) modify R&R No. 2 to reflect that Under Armour should reimburse Mr. Williams for no more than six months of e-discovery hosting charges and for the other charges reflected on the invoice as the Court previously approved." ECF 216, pp. 2-3.

As to attorney-client privilege and the work-product doctrine, the Special Master made five specific recommendations: (1) that Mr. Williams should be required to produce emails and attachments he forwarded to Washington Wild Things employees because forwarding the emails waived the privilege (*id.* at 15); (2) that Mr. Williams should not be required to produce emails he forwarded to his wife, Francine Williams, because such emails are protected by the spousal privilege (*id.* at 16); (3) that Mr. Williams should be required to produce emails in which his daughter, Dr. Nicole Williams, was copied on the chain or that he forwarded to her because there is no parent-child privilege (*id.* at 17); (4) that Mr. Williams should not be required to produce emails involving consultants on legal matters because such emails are protected by the attorney-client privilege (*id.* at p. 19); and (5) that Mr. Williams should be required to produce blank transmittal emails (to the extent that the emails do not fall into categories (1)-(4)) because blank transmittal emails are not privileged. *Id.* at 19.

Under Armour "does not take issue with the Special Master's rationale in resolving" the discovery dispute. ECF 221, p. 2. However, Under Armour seeks

clarification on two issues: (1) whether two specific documents are privileged; and (2) whether all documents shared with Dr. Williams must be produced. *Id.* at 2-4.

MET, on the other hand, raises five substantive objections to the Special Master's decision. First, MET argues that the Special Master did not undertake the proper analysis of the documents. ECF 222, p. 10. MET argues that, at all relevant times, Mr. Williams was acting as MET's lawyer and thus the documents are non-responsive because the scope of the subpoena only covers documents related to Mr. Williams's actions as MET's owner/investor. *Id.* Second, MET lists certain documents that it argues were "inadvertently" ordered to be produced based on the Special Master's reasoning. *Id.* at 11. MET argues that these documents are privileged and Under Armour has not met its burden to show that the privilege was waived with respect to these documents. *Id.* Third, MET objects to the Special Master's finding that forwarding documents to Washington Wild Things employees waives the privilege, and further argues that, regardless of any waiver regarding the emails, the documents attached to emails would remain privileged. *Id.* at p. 14. Fourth, MET argues that emails forwarded to Mr. Williams's daughter, Dr. Williams, are privileged because she was acting as a consultant to MET. *Id.* at 14. Fifth, MET argues that that R&R No. 3 requires Mr. Williams to produce documents that are unresponsive, and that Mr. Williams should not be required to produce documents that have already been produced by other parties. *Id.* at p. 15-16.

Separate from its merits objections, MET also raises a process objection. MET argues that the Special Master only relied on informal conferences and emails instead of formal briefing, and that such an informal process is not appropriate when deciding the privilege issues. *Id.* at p. 17.

Non-party Stuart Williams reiterates MET's objection that he should not have to produce any documents, regardless of privilege, because he was acting as MET's

lawyer and thus the documents are non-responsive because the scope of the subpoena only covers documents related to his actions as MET's owner/investor. ECF 225.

## STANDARD OF REVIEW

Because the parties objected to the Special Master's Report and Recommendation, the Court must review all findings of fact and legal conclusions *de novo*. Fed. R. Civ. P. 53(f)(3)-(4).

## DISCUSSION & ANALYSIS

Before turning to the merits of the objections, the Court will address MET's process objection that it did not have an opportunity to fully brief the relevant issues because the Special Master "never requested any formal briefing or submission of evidence." ECF 222, p. 17. The Court overrules this objection. Contrary to MET's assertion that "the Special Master's entire recommendation is based solely on the parties' counsels' informal conversations with the Special Master over Zoom and a few emails" (*id.*), the Special Master submitted a 245-page appendix along with R&R No. 3 that includes numerous emails from the parties stating their positions and engaged in an *in camera* review of the documents at issue. ECF 217. Additionally, both parties, as well as Mr. Williams, had the opportunity to fully brief the issues in their objections, responses, and replies thereto. The Court is satisfied that it has all the information it needs to consider the parties' objections to R&R No. 3.

Neither party objected to the Special Master's recommendations (1) that emails Mr. Williams shared with his wife are protected by spousal privilege; and (2) to modify R&R No. 2, and so the Court adopts those recommendations after finding no clear error in the Special Master's legal conclusions as to those recommendations only.[1]

---

[1] Rule 53 does not specify the scope of review as to a Special Master's findings of fact and conclusions of law to which the parties do not object. *Seggos v. Datre*, No. 17-2684, 2019 WL 3557688, at *2 (E.D.N.Y. Aug. 5, 2019) (analogizing special master rule to statute governing magistrates and concluding that clear error review of unobjected-to factual findings and legal conclusions appropriate). However, federal

Having addressed these initial matters, the Court turns to the parties' objections.

## I. MET's objections.

### A. Mr. Williams's role as owner/investor.

MET argues that the Special Master did not undertake the proper analysis of the documents. ECF 222, p. 10. MET states that it provided a privilege log in the interest of transparency even though "Mr. Williams was always wearing his lawyer hat[.]" ECF 222, p. 5. In other words, MET logged documents as privileged, even though it considered them non-responsive. MET argues that, at all relevant times, Mr. Williams was acting as MET's lawyer and thus the documents are non-responsive because the scope of the subpoena only covers documents related to Mr. Williams's actions as MET's owner/investor. *Id.* Mr. Williams submitted a declaration stating that he "provide[d] MET with legal advice on numerous matters including this civil action." RR3 App., p. 240. MET also submitted MET's financial documents from 2017 and 2018, which show that Mr. Williams invested in the company in 2018 but not in 2017. ECF 233-2; ECF 233-3.

On the other hand, Under Armour claims that the lines are too blurred between investor and lawyer. For example, it argues that Wilson Sonsini, Mr. Williams's law firm, is also an investor in MET. ECF 228, p. 2. Under Armour also argues that MET did not introduce "any engagement letter, nor any law firm billing records" to support its conclusion that Mr. Williams was always acting as counsel, and not as investor. *Id.* at 3. While MET asserts that Mr. Williams did not become "an owner or investor in MET until 2017," ECF 229, p. 2, Under Armour refutes this

---

district courts routinely review objected-to portions of a special master's report and recommendation *de novo* and unobjected to portions for clear error, and the Court will do so here. *Id.*; *see also Daedalus Blue, LLC v. Microstrategy Inc.*, No. 20-551, 2023 WL 6221774, at *4 (E.D. Va. Sept. 25, 2023) ("Any non-objected-to portions of a Special Master's report and recommendation are reviewed for clear error.") (collecting cases).

by citing to deposition testimony from Shannon Vissman, MET's founder, who stated that Mr. Williams funded MET "over the years" from "about 2015, '16, '17 time[.]" ECF 232, p. 4.

After carefully reviewing the parties' arguments and the records, the Court makes the two following findings.

First, there is no evidence in the record that that Mr. Williams was an investor before 2015, and so any documents on the privilege log that reflect communications by and between Mr. Williams that pre-date 2015 are non-responsive, and need not be produced.

Second, documents that reflect 2015-forward communications on the privilege log shall be considered responsive, unless otherwise noted elsewhere this order. While MET technically raises a responsiveness argument, this issue really concerns privilege, and Mr. Williams bears the burden of establishing attorney-client privilege—specifically, that he was solely acting in his capacity of counsel. Mr. Williams has not met his burden, as there is evidence that he was an investor as early as 2015, and there has been no evidence put forward as to any engagement letter, billing records, firewalls, or other procedures to establish that he was communicating solely as counsel as part of the communications at issue. On balance, the Court is unconvinced by MET and Mr. Williams's arguments as to non-responsiveness given the information submitted to it, and so will analyze the Special Master's report and recommendations as they related to the attorney-client privilege and work-product doctrine.

### B. Miscategorization errors.

MET lists certain documents that it argues were "inadvertently" ordered to be produced based on the Special Master's reasoning. ECF 222, pp. 10-11. MET argues that these documents are privileged and Under Armour has not met its burden to show that the privilege was waived with respect to these documents. *Id.* MET

identifies the following specific documents the Special Master ordered Mr. Williams to disclose that it believes are protected by attorney-client privilege: "(1) REV0006991, REV0016492-3, REV0012658-70, REV0017886-8, REV0018630, and REV0018641-2 are emails and attachments from Dr. Vissman to Mr. Williams regarding draft agreements involving MET; (2) REV0007258 and REV0017927-8 are draft agreements involving MET that Mr. Williams emailed to himself; (3) REV0007256, REV0013242, REV0014272-74, REV0017898, REV0017924, REV0018650-7, and REV0018993 involve Mr. Williams' discussions of draft MET agreements with his colleagues at WSGR; (4) REV0007024-5, REV0007239-42, REV0007256-7, REV00072659-60, REV0007626, REV0017909-11, REV0017931-3, REV0018665-8, REV0018995, and REV0026585 are emails with attachments involving Mr. Williams, other MET personnel, and WSGR employees regarding draft agreements[;] (5) A few emails that the Special Master found were protected by the spousal privilege (R&R at 16) were inadvertently included in the list of documents to be produced. These documents include REV0011992-4 and 11999-12002." ECF 222, p. 11.

As an initial matter, the Court did not review REV0012658-60, REV0017886, REV0014272-74, REV0007024-5, REV00072659-60, REV0017909 because the parties did not provide those documents to the Special Master or the Court for review.

After an *in camera* review of the remaining documents, the Court makes the following rulings:

- REV0007258—this is an email that Mr. Williams forwarded to himself regarding legal advice to MET and is protected by the attorney-client privilege.
- REV0016492-3—portions of this email are privileged; however, the Special Master ordered that the privileged portions be redacted. The

7

Special Master's ruling on these documents was correct and MET should comply with that portion of the Special Master's order.

- REV0006991, REV0012661-70, REV0017887-8, REV0013242, REV0017898, REV0017924, REV0017927-8, REV0018650-4 REV0018993, REV0007626, REV0017931-3, REV0018665-8, REV0018995, REV00017910, and REV0026585—these documents are attachments to emails, but the Court does not have the cover emails associated with them, and so cannot perform an appropriate privilege review. In light of this, the Court orders the parties (including non-party, Mr. Williams) to confer on these documents, in light of this order, to determine if they can resolve or narrow this dispute. If the parties cannot come to an agreement, MET and/or Mr. Williams shall submit the associated email to the Court so the Court can make a privilege determination.

- REV0018630—this document is an attachment to an email from Dr. Vissman to Mr. Williams, asking Mr. Williams to review it. Thus, this document is privileged and need not be produced.

- REV0018641-2—these documents are emails and attachments from Mr. Williams to Dr. Vissman and are protected by the attorney-client privilege.

- REV0018655-7—this email and its attachments are between Mr. Williams and a Wilson Sonsini colleague and are protected by the attorney-client privilege.

- REV0007256-7—this email and attachment involve discussions of draft MET agreements between MET, its consultants, and Mr. Williams, and is protected by attorney-client privilege.

- REV0007024-5—the Court did not review these documents and they are addressed separately in Section II.A of this Order.
- REV0007239-42—these documents are emails and attachments from Mr. Williams to Dr. Vissman and are protected by the attorney-client privilege.
- REV0017911—this is a blank document that need not be produced because it is unresponsive.
- REV0011992-4 and 11999-12002—these documents are emails and attachments that Mr. Williams forwarded to his wife, are protected by the spousal privilege, and need not be produced.

In light of the Court's above determinations, if any disputes about these documents remain, the Court orders the parties to confer on any such disputes, in light of this order. If the parties cannot agree, they should submit to the Court the documents in dispute and the parties' positions as to the documents.

### C. Emails forwarded to Washington Wild Things employees for printing.

The Special Master concluded that Mr. Williams's forwarding of documents to Washington Wild Things employees destroyed attorney-client privilege because: (1) there was nothing in the record suggesting that the employees were "agents" of Mr. Williams or were assisting him with providing legal advice to MET; and (2) the emails did not include an admonition to maintain confidentiality or instruct the employees what to do with the emails once the documents were printed. ECF 216, pp. 14-15. MET objects to the Special Master's finding that forwarding documents to Washington Wild Things employees waives the privilege, and argues that the documents attached to emails would remain privileged. ECF 222, p. 14. Under Armour presented evidence that Mr. Zavacky was the general manager of the

9

ballpark, and not a personal assistant to Mr. Williams. ECF 228, pp. 5-6. The Court agrees with the Special Master.

As the Special Master correctly noted, federal common law governs the application of the attorney-client privilege because this case involves federal question and diversity jurisdiction. ECF 216, p. 7. n.2; *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982). However, because the Third Circuit and Pennsylvania apply the same test for attorney-client privilege, the Court may look to both federal and Pennsylvania courts for guidance. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994); *Gilliland v. Geramita*, No. 05-1059, 2006 WL 2642525, at *2 n.2 (W.D. Pa. Sept. 14, 2006) (McVerry, J.).

The attorney-client privilege "applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979) (cleaned up).

The party claiming privilege bears the burden of proving that the communication is privileged. *Gilliland*, 2006 WL 2642525, at *4; *BouSamra v. Excela Health*, 210 A.3d 967, 982 (Pa. 2019). Once the party has established that privilege applies, the burden shifts to the seeking party to show that the privilege doesn't apply or has been waived. *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 390 (W.D. Pa. 2005) (Gibson, J.).

Both federal and Pennsylvania law recognize that the attorney-client privilege can be extended to a third party who is acting as the attorney's agent. *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961); *BouSamra*, 210 A.3d at 985. This is often the case for ministerial employees, such as "secretaries, file clerks, telephone operators, messengers, clerks not yet admitted to the bar, and aides of other sorts." *Kovel*, 296 F.2d at 921. In examining whether communications with a third party are covered by attorney-client privilege, the Third Circuit and Pennsylvania courts both look to whether the third party's presence is necessary to the attorney's provision of legal advice. *Salvagno v. Borough of Glen Ridge*, No. 08-2992, 2009 WL 2392887, at *2 (D.N.J. Aug. 3, 2009) ("While the Third Circuit has adopted the *Kovel* approach, it has been loath to construe the privilege broadly and has viewed what assists an attorney in rendering legal advice narrowly."); *BouSamra*, 210 A.2d at 985 ("[T]he critical fact is that the third-party's presence was either indispensable to the lawyer giving legal advice or facilitated the lawyer's ability to give legal advice to the client."). Thus, the key consideration here is whether Mr. Zavacky's[2] presence here was necessary to facilitate Mr. Williams's provision of legal advice to MET.

Mr. Williams forwarded emails to Messrs. Zavacky, Heider, Blaine, and other Washington Wild Things employees to be printed. ECF 216, pp. 13-14. Mr. Williams owns the entity that owns the stadium where the Washington Wild Things play. RR3 App., p. 240. According to MET, Mr. Zavacky is "the individual in charge" of the entity that owns the stadium and "a confidential executive assistant" to Mr. Williams. *Id.* at 241. Mr. Williams used an office at the stadium to perform legal services for MET and other clients. *Id.* at 240.

If Mr. Zavacky was employed by Mr. Williams directly or by his law firm, he would be a clear-cut example of a ministerial employee who facilitated Mr. Williams's

---

[2] The Special Master referenced multiple employees, but MET's objections and Under Armour's response focus on Mr. Zavacky.

11

provision of legal advice to MET, as well as to Mr. Williams's other clients. But he is not. Mr. Zavacky is instead employed by a separate entity that Mr. Williams owns. There is no evidence in the record that Mr. Williams had a separate agreement with Mr. Zavacky through which Mr. Zavacky assisted him with client representation. There is similarly no evidence that Mr. Williams instructed Mr. Zavacky to keep any legal-related documents confidential.

In a similar factual scenario, a special master, applying federal attorney-client privilege law, concluded that a client's board member who worked for two different entities waived attorney-client privilege by copying his outside executive assistant on privileged communications. *Sports Rehab Consulting, LLC v. Vail Clinic, Inc.*, No. 19-2075, 2022 WL 17976702, at *16 (D. Colo. Oct. 21, 2022), *report and recommendation adopted sub nom. Sports Rehab Consulting, LLC*, No. 19-2075, 2023 WL 2824300 (D. Colo. Mar. 13, 2023). The special master observed that "a client is not free to designate every conceivable person under the sun as their ministerial agent." *Id.* (cleaned up). The district court adopted the special master's report and recommendation, stating that client corporation did not meet its burden to show that the board member's copying of privileged emails to an executive assistant not employed by the corporate client should be privileged. *Sports Rehab Consulting, LLC*, 2023 WL 2824300, at *13. The Court finds this decision to be persuasive here.

Even though here it was the attorney, Mr. Williams, and not the client, who forwarded the emails to an outside executive assistant, the reasoning in *Sports Rehab*, combined with the general admonitions about privilege as applied to agents found in federal and Pennsylvania law, are persuasive. As such, the Court agrees with the Special Master and concludes that Mr. Williams waived the privilege by forwarding emails to Mr. Zavacky and any other employee of the Washington Wild Things. Mr. Zavacky cannot be considered Mr. Williams's agent because Mr. Zavacky

was not employed by Mr. Williams and there is nothing in the record suggesting that his presence was necessary for Mr. Williams to provide legal advice.

Protection under the federal work-product doctrine was also waived because disclosure to third parties waives this protection unless "disclosure furthers the doctrine's underlying goal." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1429 (3d Cir. 1991). Here, Mr. Williams was forwarding documents to a third party for printing, which does not further the underlying goal of the work product doctrine of protecting the mental impressions and opinions of attorneys.

One more thing. MET cites to *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 20-292, 2023 WL 8358117 (M.D. Pa. Dec. 1, 2023) (subsequent history omitted) for the proposition that because at least some of the emails that Mr. Williams sent to Mr. Zavacky were attachments to blank transmittal emails, the attachments are still privileged. ECF 222, p. 14. The reasoning in *Pace-O-Matic* is inapplicable here because in that case, the emails were internal to the law firm and thus remained privileged. *Pace-O-Matic, Inc.*, 2023 WL 8358117 at *8. While it is true attachments to blank transmittal emails may retain their privilege even if the blank transmittal email is not privileged, forwarding the attachments to a non-privileged third party waives the privilege. *Dempsey v. Bucknell Univ.*, 296 F.R.D. 323, 336 (M.D. Pa. 2013).

D.  **Emails copying Dr. Nicole Williams.**

Mr. Williams also sent emails on which his daughter, Dr. Williams, was copied. ECF 216, pp. 16-17. The Special Master found that these documents were not privileged because "there is nothing in the record or the documents reviewed to suggest that she assisted Mr. Williams or his firm (or any other lawyers) with legal advice provided to MET or other clients." *Id.* at 17. MET argues that emails forwarded to Dr. Williams are privileged because she was acting as a consultant to MET. ECF 222, p. 14.

13

While there is no "consultant" privilege, the attorney-client privilege can apply to a consultant if she is acting as the attorney's agent. As discussed in more detail above, the key consideration is whether the consultant is necessary for the lawyer's provision of legal advice to the client. *Kovel*, 296 F.2d at 921; *BouSamra*, 210 A.3d at 985.

Dr. Williams is a medical doctor who is a sales consultant for MET. ECF 228-2, 102:15-103:2. According to MET, Dr. Williams has been "a contracted consultant for MET since 2021 tasked with developing new and prospective customers." ECF 222-1, Declaration of Nicole Sullivan, ¶ 26. MET identifies the following documents that Dr. Williams is copied on that it believes are privileged: "(REV00) 8420-22, 11995-98, 12003-6, 12028, 12032-41, 13755-6, 14405-6, and 14415[.]" ECF 222, p. 15 n.3. Considering the facts that MET has alleged with respect to Dr. Williams's role, and after conducting its own *in camera* review of (REV00) 8420-22, 11995-98, 12003-6, 12028, 12032-41, 13755-6, 14405-6, and 14415, the Court concludes that the purpose of these documents relates to legal matters because the documents generally relate to communications about draft agreements that the recipients are being asked to weigh in on. As such, Mr. Williams will not be required to produce documents on which Dr. Williams is copied. Thus, MET's objection on this issue is sustained, and this aspect of R&R No. 3 will not be adopted.

E.   **Documents that are unresponsive.**

MET argues that that the R&R requires Mr. Williams to produce documents that are unresponsive. ECF 222, p. 15. MET lists the following documents that it deems to be unresponsive: REV0002487; REV0002659; REV00014278-90; REV00018294. *Id.* REV0002487 and REV00014278-90 are not included on any privilege log in the record and were not provided to the Special Master or this Court for *in camera* review. If a dispute still exists as to these documents, the parties shall

confer, and if they cannot agree, MET shall submit the documents to the Court for *in camera* review.

As to the other documents, the Court has performed an *in camera* review and finds the documents to be unresponsive, thus, Mr. Williams need not produce them.

### F. Documents that have already been produced.

MET argues that Mr. Williams should not be required to produce emails that have already been produced in the discovery process. ECF 222, p. 16. Under Armour does not contest this in its briefing. ECF 228; ECF 232. If documents have already been produced, they need not be re-produced if it would be "unreasonably cumulative" to produce them. *Dooley v. Wetzel*, No. 18-1310, 2022 WL 1597834, at *4 (M.D. Pa. May 19, 2022). Because MET has identified with specificity which documents are duplicates of documents that have already been produced, the Court will not require Mr. Williams to re-produce those documents.

## II. Under Armour's objections.
### A. REV0007024 and REV0007025.

The parties engaged in extensive discussion regarding these documents in their briefing. ECF 221, pp. 2-3; ECF 229, pp. 2-3; ECF 232, pp. 2-4. MET claims that they are non-responsive because (1) they relate to Mr. Williams's role as counsel; and (2) they are related to the provision of legal advice. ECF 229, p. 2. Under Armour claims that the documents are not privileged because they are between two non-lawyers and Mr. Williams is only copied on the chain, and MET and Mr. Williams have not met their burden to show the documents are privileged. ECF 232, pp. 3-4.

These documents were not provided to the Special Master for *in camera* review. The parties asked the Special Master to clarify whether these documents need to be produced (ECF 222-2, p. 3), but the Special Master declined to take a position on these documents in light of the lack of *in camera* review. ECF 222-5, p. 1 ("(REV000) 7024-7025 are not in the materials I reviewed and I cannot determine the

15

content based on the description."). The Court does not appear to have these documents, either. Thus, as to these two documents, the Court orders the parties (including non-party, Mr. Williams) to confer on these documents, in light of this order, to determine if they can resolve or narrow this dispute. If the parties cannot come to an agreement, MET and/or Mr. Williams shall submit the documents to the Court so the Court can make a privilege determination.

### B. Documents involving Dr. Williams.

In light of the Court's modification of the Special Master's recommendation as to emails involving Dr. Williams, Mr. Williams is not required to produce such emails and Under Armour's request for confirmation is overruled.

## III. Remaining issues.

After R&R No. 3 was issued, the parties identified a number of discrepancies in the ordering paragraphs that caused confusion. ECF 222-3. The Special Master issued clarifying statements via email to the parties. *Id.* The parties shall confer on this to determine whether any additional guidance from the Special Master and Court is needed.

## CONCLUSION

For the foregoing reasons, the Report & Recommendation (ECF 216) prepared by Special Master Bibikos is **ADOPTED** as the opinion of the Court, as modified herein. It is hereby **ORDERED** that:

- Mr. Williams must produce emails he forwarded to Washington Wild Things employees for printing;
- Mr. Williams is not required to produce emails on which Dr. Nicole Williams is copied;
- Mr. Williams is not required to produce documents that have already been produced by any other party;
- To the extent disputes exist over any remaining documents, including any

documents not provided to the Special Master or the Court for *in camera* review, the Court orders the parties (including, if appropriate, non-party, Mr. Williams) to confer on these documents, in light of this order, to determine if they can resolve or narrow this dispute. If the parties cannot come to an agreement, they shall file a joint notice that identifies the disputes, and the Court will then issue a separate order, to address any *in camera* submissions and supplemental briefing. Any such joint notice must be filed by December 1, 2024.

\* \* \*

DATE: November 14, 2024                                     BY THE COURT:

                                                            /s/ *J. Nicholas Ranjan*
                                                            United States District Judge