IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MULTIPLE ENERGY TECHNOLOGIES, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| UNDER ARMOUR, INC., | |
| Defendant. | |

2:20-CV-664-NR

### MEMORANDUM OPINION

### J. Nicholas Ranjan, United States District Judge

Plaintiff Multiple Energy Technologies, LLC brings various claims against Defendant Under Armour, Inc. for violation of the Lanham Act; violation of the Sherman Act; misappropriation of trade secrets; breach of non-disclosure agreement; tortious interference with contract; tortious interference with prospective business expectancies; unjust enrichment; unfair competition; conversion; a claim for an accounting; and a claim for injunctive relief. Following discovery, Under Armour moved to exclude the expert testimony of MET's damages expert Peter Wrobel. ECF 252. No party requested an evidentiary hearing.

After careful consideration, the Court will deny the motion, with one qualification. The Court has questions about Mr. Wrobel's EBITDA calculation, and finds that it is necessary to hold an *in limine* hearing—either at the final pre-trial conference or at trial, with Mr. Wrobel in appearance—pertaining solely to this narrow issue.[1] So, the Court will hold in abeyance this aspect of the motion, but will deny the rest of the motion.

---

[1] The Court otherwise finds that an evidentiary hearing is unnecessary, owing to the well-developed record, including the experts' reports, the deposition testimony, and extensive briefing.

## BACKGROUND[2,3]

MET retained Peter Wrobel to (1) calculate Under Armour's marginal profits earned on certain infringing product sales; (2) calculate amounts Under Armour owed or potentially owed to MET under a reasonable royalty on non-MET products; (3) calculate unpaid royalties Under Armour owes to MET on MET products; and (4) compile accounting and financial data relevant to MET's damage claims.  ECF 254-1, p. 2.

## LEGAL STANDARD

The Court serves as the "gatekeeper" of expert testimony.  *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  "As gatekeeper, a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is sufficiently tied to the facts of the case, so that it fits the dispute and will assist the trier of fact."  *UGI Sunbury LLC v. A Permanent Easement*, 949 F.3d 825, 832 (3d Cir. 2020) (cleaned up).

"Qualification refers to the requirement that the witness possess specialized expertise."  *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  "[A] broad range of knowledge, skills, and training qualify an expert."  *Id.* (citation omitted).

Reliability demands an expert's conclusions be "based on the methods and procedures of science, not on subjective belief and unsupported speculation."  *Karlo*

---

[2] The Court writes for the benefit of the parties, who are familiar with the extensive factual and procedural background, as well as the allegations in the third amended complaint.

[3] Unless otherwise noted, all citations to the record refer to the page number of the ECF filing stamp on the top of each page (rather than the native page number).

*v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80-81 (3d Cir. 2017) (citation omitted). In assessing this requirement, "the court looks to whether the expert's testimony is supported by 'good grounds.'" *Id.* (citation omitted). And whether "good grounds" exists generally entails consideration of several factors, including:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*UGI Sunbury*, 949 F.3d at 834 (citation omitted). These factors are not, however, "exhaustive nor applicable in every case." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 248 (3d Cir. 2008). Rather, the Court's "gatekeeping inquiry must be tied to the particular facts" of the case. *Kumho Tire*, 526 U.S. at 138; *see also id.* at 153 (whether "specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine").

Finally, an expert's conclusions "fit" the case if they "will help the trier of fact to understand the evidence or to determine a fact in issue." *UGI Sunbury*, 949 F.3d at 835 (quoting Fed. R. Evid. 702(a)). "This condition goes primarily to relevance[,]" *Karlo*, 849 F.3d at 81, though it is "higher than bare relevance." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994).

"[T]he burden of proof under FRE 702 is on the proponent of the expert testimony, not the party moving to exclude that testimony, to establish the admissibility of that testimony by a preponderance of the evidence." *PNC Fin. Servs. Grp., Inc. v. Plaid Inc.*, No. 20-1977, 2024 WL 3691607, at *3 (W.D. Pa. Aug. 7, 2024) (Hornak, C.J.).

## DISCUSSION & ANALYSIS

Under Armour doesn't challenge Mr. Wrobel's qualifications.[4] Instead, it argues that (1) Mr. Wrobel's calculation of Lanham Act damages is unsupported, illogical, implausible, and speculative; (2) that Mr. Wrobel's projection of future royalties owed to MET is speculative and unreliable; (3) that his calculation of owed royalties is unreliable and unsupported; and (4) that his calculation of EBITDA losses is unreliable and irrelevant. ECF 254.

### I.  Mr. Wrobel's calculation of Lanham Act damages is admissible.

Under Armour has two primary arguments against Mr. Wrobel's Lanham Act damages calculation. Neither argument is persuasive.

First, Under Armour argues that Mr. Wrobel's calculation of Under Armour's revenue and his estimate of Under Armour's marginal profits stemming from that calculation, are "flawed and based on unreasonable and implausible assumptions." *Id.* at p. 6. Those assumptions, Under Armour contends, are that his revenue figure is based on the total revenues from sales of every Under Armour product containing Hologenix's Celliant product, even though: (1) around $53 million is attributable to "yarn revenue," or product where Celliant is woven into yarn rather than printed onto textile, and MET's Redwave powder isn't woven; and (2) "yarn revenue" is exclusive to an Under Armour product line that didn't utilize any of the allegedly false advertisements. *Id.* at 6-7. In other words, Under Armour considers Mr. Wrobel's damages calculation to be inadmissible because he lacks support for his decision to consider 100% of Celliant-containing Under Armour products from July 2017 through May 2023 "infringing product sales[,]" or sales derived from the alleged false advertising *Id.* at 7-9.

---

[4] And after review of the record, the Court concludes that he is qualified.

"To the extent that [an expert's] opinions [are] predicated upon factual assumptions . . . , those assumptions must find some support in the record." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1142 (3d Cir. 1990) (cleaned up). But these facts go to liability; Mr. Wrobel is a damages expert, not a liability or causation expert; and "all damages expert opinions are dependent on the assumption that liability has been proven." *Rhoads Indus., Inc. v. Shoreline Found., Inc.*, No. 15-921, 2021 WL 2778562, at *30 (E.D. Pa. July 2, 2021) (cleaned up); see also *TAKTL, LLC v. IWR, N. Am., LLC*, 18-1546, 2024 WL 4415194, at *7 (W.D. Pa. Oct. 4, 2024) (Cercone, J.) (expert was "entitled to base his damages report on the assumption that [the plaintiff] is solely responsible for the delays because all damages expert opinions are dependent on the assumption that liability has been proven" (cleaned up)).

Mr. Wrobel's calculation might overestimate the amount of damages MET would be entitled to recover. But MET might also establish at trial that damages include all Celliant-containing products. So this isn't a basis on which to exclude Mr. Wrobel's calculation at this juncture. And since his calculation was based on Under Armour's financial data, it has some basis in the record, and is thus based on "good grounds." Under Armour can otherwise attack any assumptions on cross. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) ("[T]he burden of exploring the facts and assumptions underlying the testimony of an expert witness [is] on opposing counsel during cross-examination.").[5]

---

[5] The cases cited by Under Armour in its reply brief don't instruct otherwise. For example, Under Armour discusses at length *In re Elysium Health-ChromaDex Litig.*, No. 17-7394, 2022 WL 421135, at *15 (S.D.N.Y. Feb. 11, 2022), where the court excluded a damages expert whose report was "plagued with assumptions" going to causation. ECF 280, pp. 2-4. But in *Elysium*, there didn't seem to be *any* causation evidence in that case to support the damages expert's liability assumption. *See Elysium*, 2022 WL 421135, at *20 n.6 ("Because Gunderson's opinions provide no evidence of causation or injury, his disgorgement analysis will only be relevant to the extent that ChromaDex can independently demonstrate those. As the Court holds in an accompanying Opinion and Order, it cannot."). Since MET concedes that it isn't

- 5 -

Second, Under Armour criticizes Mr. Wrobel's failure to consider several things while calculating his damages figure, like reviewing the at-issue advertisements, analyzing the effect of the advertisements on consumers, or accounting for the fact that Under Armour ceased referencing the FDA in any promotions earlier than 2023. *Id.* at 7-8.

Given there are "good grounds" for his opinion, "whether [Mr. Wrobel] should have considered more is an issue that goes to the weight, rather than the admissibility of his testimony." *TAKTL*, 2024 WL 4415194, at *5 (cleaned up).

The Court thus declines to exclude Mr. Wrobel's report and testimony concerning his calculation of Lanham Act damages.

## II. Mr. Wrobel's calculation of future royalties is admissible.

Under Armour argues that Mr. Wrobel's projection of royalties that Under Armour would owe MET in the future, around $4.66 million, is speculative and unreliable, due to three of Mr. Wrobel's assumptions underlying that calculation: (1) that MET would have entered into a royalty agreement like the one between Under Armour and Hologenix; (2) that the agreement would have continued through the end of 2031; and that (3) sales of Under Armour's hypothetical products containing MET's Redwave would have been equivalent to 100% of the sales during that period of Under Armour's products containing Hologenix's Celliant. ECF 254, pp. 9-10.

Mr. Wrobel's assumptions are permissible. His assumptions that MET and Under Armour would have entered into a royalty agreement comparable to the one that did exist between Under Armour and Hologenix, and the length of that

---

attempting to establish liability through Mr. Wrobel, *Elysium* is inapposite. *See also Controls Se., Inc. v. QMax Indus., Inc.*, No. 21-302, 2024 WL 2160845, at *2 (W.D.N.C. May 14, 2024) (distinguishing similar case relied upon by Under Armour, *Verisign, Inc. v. XYZ.com LLC*, 848 F.3d 292 (4th Cir. 2017), because the expert there was offered to opine on both causation and damages).

agreement, is supported by the former business relationship between MET and Under Armour, and Mr. Wrobel's conversations with MET's CEO Dr. Shannon Vissman. Those assumptions are thus "reasonably based on the evidence in the record[.]" *Brill v. Marandola*, 540 F. Supp. 2d 563, 570 (E.D. Pa. 2008); *see also T.N. Inc., Ltd. v. Fid. Nat'l Info. Servs., Inc.*, No. 18-5552, 2021 WL 5980048, at *9 (E.D. Pa. Dec. 17, 2021) (expert permitted to rely on discussion with executive of defendant in assuming length of contract renewal); *accord Supervalu, Inc. v. Associated Grocers, Inc.*, No. 04-2936, 2007 WL 624342, at *3 (D. Minn. Jan. 3, 2007) (damages expert permitted to assume that plaintiff would win contract renewal and the length of that renewal).[6] To the extent other record evidence contradicts the assumptions—like that MET "made excessive financial demands, [and] was a bad business partner[,]" ECF 280, p. 6 n.2, or "different capabilities of Celliant and Redwave[,]" ECF 254, p.10—it is fodder for cross examination.[7] *Walker v. Gordon*, 46 F. App'x 691, 695–96

---

[6] Indeed, the very nature of a reasonable royalty analysis is hypothetical. *See I-Mab Biopharma v. Inhibrx, Inc.*, No. 22-276, 2024 WL 4555870, at *2 (D. Del. Oct. 17, 2024) ("Under the reasonable royalty framework of damages permitted under the [analogue federal Defend Trade Secrets Act (DTSA)], parties rely upon a hypothetical negotiation analysis to 'attempt to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before misappropriation began.'" (cleaned up) (quoting *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014)). So it makes sense for Mr. Wrobel to assume the parties entered into an agreement like the one that existed between Under Armour and a company selling an ostensibly similar product.

[7] That Mr. Wrobel didn't independently confirm that the 2031 end date was reasonable doesn't warrant excluding Mr. Wrobel's opinion. Mr. Wrobel didn't rely on unverified financial projections; Dr. Vissman's estimate was just the end date for Mr. Wrobel's calculation. *Compare with Legendary Art, LLC v. Godard*, No. 11-0674, 2012 WL 3550040, at *4 (E.D. Pa. Aug. 17, 2012) (excluding expert where reliance on profit and loss projections were the "linchpin" of that expert's opinion); *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 138 (M.D. Pa. 2015) ("[T]he crux of the *Legendary Art*[] decision and the authorities from which it draws is that experts who use data in their reports without independently verifying the accuracy or reliability of those figures fail to satisfy this Circuit's reliability requirement."). And, as explained, Mr. Wrobel *does* have a factual basis for this assumption. The strength of that factual

(3d Cir. 2002) ("An expert is . . . permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury.").

The same goes for Mr. Wrobel's assumption that Under Armour's hypothetical sales of Redwave-containing product would have been equivalent to Under Armour's actual sales of Celliant-containing product. Under Armour can present facts it believes undermine that assumption—such that MET allegedly had no employees since 2018—on cross examination. *See Stecyk*, 295 F.3d at 414.

The Court therefore declines to exclude Mr. Wrobel's report and testimony concerning his calculation of future reasonable royalties.

### III. Mr. Wrobel's calculation of owed royalties is admissible.

Under Armour argues that Mr. Wrobel's calculation of unpaid royalties that Under Armour owes MET for sales of Redwave-containing products since January 1, 2018, is unreliable and unsupported, because: (1) he doesn't refer to any evidence demonstrating Under Armour failed to pay MET for Redwave deliveries (and acknowledges his two royalty calculations are "hypothetical"); (2) he doesn't refer to any evidence demonstrating there was a "formal agreement" between Under Armour and MET with respect to the 2017 royalty rate; (3) his assumptions are contrary to the parties' 2017 short-term agreement; and (4) in calculating his "blended royalty rate[,]" he didn't analyze whether his price-per-unit was realistic. ECF 254, pp.12-13.

The Court starts with Under Armour's argument that Mr. Wrobel's assumptions are contrary to the 2017 agreement, since Under Armour contends that that discrepancy means Mr. Wrobel's entire "premise is flawed[.]" ECF 254, p. 13; ECF 280, p. 7. Specifically, Under Armour maintains that under the parties' 2017

---

basis is for Under Armour to attack at trial. *Compare with Apotex, Inc. v. Cephalon, Inc.*, 321 F.R.D. 220, 235 (E.D. Pa. 2017) (excluding expert opinion assuming, without factual basis, "but-for world," in which plaintiff was first mover in market, contrary to reality where plaintiff was subject to exclusivity bottleneck).

short-term agreement, "Under Armour paid MET when a unit was ordered, not on a subsequent consumer sale[.]" ECF 254, p. 13. According to Under Armour, Under Armour didn't order additional Redwave units after December 2017, so any post-2017 sales of Redwave-containing products came from inventory, meaning Under Armour didn't owe MET anything on those sales. *Id.*

If Mr. Wrobel's calculation was contrary to the parties' agreement, then that could be a basis to exclude Mr. Wrobel's testimony for failing to "fit" the facts of the case. *See, e.g.*, *Washington v. Kellwood Co.*, 714 F. App'x 35, 39 (2d Cir. 2017) (not abuse of discretion to exclude expert testimony where expert assumed parties would have renewed contract but contract gave other party unilateral right to decide whether to renew it); *Converdyn v. Blue*, No. 06-848, 2008 WL 113842, at *4 (D. Colo. Jan. 8, 2008) (expert's testimony could "fit" the case if party could demonstrate interpretation of ambiguous provision in contract correct).

But there are a few problems with Under Armour's attempt to exclude Mr. Wrobel's opinion on that ground. Neither Under Armour nor MET cites the at-issue agreement nor includes it as an exhibit.[8] Moreover, the Court hasn't ruled on the interpretation of that agreement, so excluding Mr. Wrobel's opinion based on the meaning of the agreement would be premature. And in any event, as MET states, there is a factual component to Under Armour's argument independent of the agreement's language; that is, that Under Armour didn't order any additional Redwave units after 2017. ECF 273, p. 17. So the Court declines to exclude Mr. Wrobel's opinion as to owed royalties for an apparent conflict with the terms of the parties' agreement.

As for Under Armour's remaining arguments, Mr. Wrobel tied his assumptions to documents in the record. Under Armour can press him on those assumptions at

---

[8] The Court couldn't find it in the parties' summary judgment appendices, either.

trial.  *See Stecyk*, 295 F.3d at 414.

The Court therefore won't exclude Mr. Wrobel's report and testimony concerning his calculation of owed royalties.

## IV. The Court will hold in abeyance its decision as to Mr. Wrobel's calculation of EBITDA losses.

Lastly, Under Armour argues that Mr. Wrobel's calculation of MET's earnings before interest, taxes, depreciation, and amortization (EBITDA) losses between 2014 and 2021 are unreliable and irrelevant because: (1) Mr. Wrobel testified his EBITDA calculation was not a "damages calculation"; and (2) Mr. Wrobel didn't attribute the losses in his calculation "to any particular cause." ECF 254, p. 13.

The Court agrees that the relevance of Mr. Wrobel's EBITDA calculation is unknown. [9]  At his deposition, Mr. Wrobel explained that he had no opinion as to its relevance.  ECF 254-2, p. 61:8-25.  And MET's response as to why it's relevant—summarily offering "that these damages are relevant and do in fact apply to its claims[,]" and directing the Court to its discussion about the reasonable royalty calculation—isn't helpful.  ECF 273, pp. 17-18.

Accordingly, for now, the Court declines to rule on whether Mr. Wrobel's EBITDA calculation should be excluded.  The Court intends to hold an *in limine* hearing—either at the final pre-trial conference or at trial, with Mr. Wrobel in appearance—as to the calculation and its relevance.  *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 152-53 (3d Cir. 2000) (suggesting *in limine* hearing when the reasons and foundations for an expert's opinion are inadequately or confusingly explicated, such that the district court has no way of determining how the expert arrived at his

---

[9] Under Armour doesn't specify whether it is attacking relevance under the Federal Rules of Evidence 401-403, or *Daubert*'s "fit" requirement.  It is of no consequence, as the Court can't discern whether it is relevant *or* "fits."

conclusions).

## **CONCLUSION**

For the reasons discussed above, the Court will leave open the issue of whether Mr. Wrobel's calculation of EBITDA losses is admissible. In all other respects, the Court will deny Under Armour's motion. ECF 252. An appropriate order follows.

DATED: January 13, 2025                    BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge