IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MULTIPLE ENERGY TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> UNDER ARMOUR, INC., <br><br> Defendant. | 2:20-CV-664-NR |

### MEMORANDUM OPINION

**J. Nicholas Ranjan, United States District Judge**

Plaintiff Multiple Energy Technologies, LLC brings various claims against Defendant Under Armour, Inc. for violation of the Lanham Act; violation of the Sherman Act; misappropriation of trade secrets; breach of non-disclosure agreement; tortious interference with contract; tortious interference with prospective business expectancies; unjust enrichment; unfair competition; conversion; a claim for an accounting; and a claim for injunctive relief. Following discovery, MET moved to exclude the expert testimony of Under Armour's damages expert Jerome Schmitt. ECF 261. No party requested an evidentiary hearing. *See* Order, ECF 290.

After careful consideration, the Court will deny the motion, with one qualification. The Court has questions about Mr. Schmitt's use of the "relief from royalty" method, and finds that it is necessary to hold an *in limine* hearing—either at the final pre-trial conference or at trial, with Mr. Schmitt in appearance—pertaining solely to this narrow issue. So, the Court will hold in abeyance this aspect of the motion, but will deny the rest of the motion.

## BACKGROUND[1,2]

Under Armour retained Jerome Schmitt to rebut MET's damages expert Peter Wrobel. ECF 262-3, ¶ 7. Mr. Schmitt opined that any disgorgement of Under Armour's profits from the sale of Recover products would be no more than $151,162. *Id.*, ¶ 76. This was based on several assumptions and methods, including: (1) assuming that the appropriate time frame for the disgorgement analysis is the period from July 1, 2017 to December 31, 2020; (2) applying the "full absorption" method, and thus finding that certain costs are appropriate deductions for purposes of calculating the profits subject to disgorgement; (3) assuming a number of factors other than the alleged advertising—including contributions from Under Armour's brand value and advertising of the Recover products beyond the alleged false statements—should be taken into account in calculating profits subject to disgorgement; and (4) applying the relief from royalty method, to essentially discount damages due to Under Armour's brand value. *Id.*, ¶¶ 54, 64, 67, 73.

## LEGAL STANDARD

The Court serves as the "gatekeeper" of expert testimony. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). "As gatekeeper, a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is sufficiently tied to the facts of the case, so that it fits the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement*, 949

---

[1] The Court writes for the benefit of the parties, who are familiar with the extensive factual and procedural background, as well as the allegations in the third amended complaint.

[2] Unless otherwise noted, all citations to the record refer to the page number of the ECF filing stamp on the top of each page (rather than the native page number).

F.3d 825, 832 (3d Cir. 2020) (cleaned up).  "[T]he burden of proof under FRE 702 is on the proponent of the expert testimony, not the party moving to exclude that testimony, to establish the admissibility of that testimony by a preponderance of the evidence."  *PNC Fin. Servs. Grp., Inc. v. Plaid Inc.*, No. 20-1977, 2024 WL 3691607, at *3 (W.D. Pa. Aug. 7, 2024) (Hornak, C.J.).

Expert testimony must be reliable.  *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co.*, 526 U.S. at 141.  To be sufficiently reliable, the expert's testimony need not have "the best foundation, or even . . . [be] supported by the best methodology or unassailable research."  *UGI Sunbury*, 949 F.3d at 834 (citation omitted).  Rather, the testimony must be supported by "good grounds," using a reliable methodology.  *See id.*  A court considers various factors to determine whether the testimony is supported by "good grounds," including: "(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put."  *Id.* (citations omitted).

## DISCUSSION & ANALYSIS

MET argues that Mr. Schmitt's opinions (1) are on topics beyond his qualifications; (2) use unreliable methodology for calculating damages; and (3) fail Rule 403 balancing because they present a serious risk of confusing the jury and are unfairly prejudicial.  ECF 262.  The Court will address each argument in turn.

**I.     Mr. Schmitt has not opined on topics beyond his expertise.**

MET claims that Mr. Schmitt offered opinions that he was unqualified to give, regarding: (1) the appropriate time frame for measuring damages arising out of false advertising; (2) the value of Under Armour's brand and how that value reduced the

- 3 -

amount of profit realized from false advertising; (3) the impact of Under Armour's advertisements beyond the alleged false statements; and (4) reasons as to why Under Armour would or wouldn't enter into a contract with MET.  ECF 262, p. 8.

*Time frame for measuring damages*.  Based on evidence in the record and "[f]or purposes of [his] analysis, Mr. Schmitt "assume[d] that a potential disgorgement of [Under Armour] profits attributable to the alleged false advertising would be limited to sales of Recover products…for the period from July 1, 2017 to December 31, 2020."  ECF 262-3, ¶ 54.

This assumption as to the appropriate time frame is perfectly acceptable.  MET confuses Mr. Schmitt's *assumption* for calculating Under Armour's profits attributable to false advertising as an opinion about marketing and advertising.  His assumption about the appropriate time frame for measuring damages is based on evidence in the record—*i.e.*, specifically, based on responses to interrogatories indicating that Under Armour's advertisements referencing the FDA had ended by March 2020 and that MET did not identify any specific instances of alleged false advertising after 2020.  ECF 262-3, ¶ 52.  The assumption is therefore permissible. *See Rhoads Indus., Inc. v. Shoreline Found., Inc.*, No. 15-921, 2021 WL 2778562, at *31 (E.D. Pa. July 2, 2021) ("[C]hallenges to the facts and assumptions underlying the testimony of an expert witness generally go to the weight of the testimony and not its admissibility," unless "the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them[.]"(cleaned up)); *Brill v. Marandola*, 540 F. Supp. 2d 563, 570 (E.D. Pa. 2008) ("The role of a damages expert is to calculate hypothetical damages given an assumed set of facts; so long as those assumed facts are reasonably based on the evidence in the record, such assumptions are permissible."); *see also Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) ("Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness

on opposing counsel during cross-examination.").

*Brand valuation*.  Mr. Schmitt opined that Under Armour's brand contributed to Under Armour's ability to make sales of Recover products.  He used the relief from royalty method to reduce Under Armour's profits from the sale of Recover products by the value of the Under Armour brand.  ECF 262-3, ¶¶ 67, 73.  MET argues that Mr. Schmitt isn't qualified to opine on Under Armour's brand value or the impact that it had on profits.  The Court disagrees.

Mr. Schmitt is a Certified Public Accountant, Certified in Financial Forensics, and Accredited in Business Valuation.  *Id.*, ¶ 2.  He has extensive experience in calculating damages—including claims for monetary relief in trademark infringement, false advertising, and other Lanham Act cases—and in the valuation of intellectual property, including trademarks and trade names.  *Id.*, ¶¶ 3-4.  Considering his qualifications, the Court finds that Mr. Schmitt is qualified to opine on brand valuation and on how Under Armour's brand and intellectual property contributed to the profit on sales of Recover products.  *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) ("[A] broad range of knowledge, skills, and training qualify an expert as such.").

*Impact of Under Armour's advertisements beyond the alleged false statements*.  Mr. Schmitt opined that Under Armour's advertisements for Recover products "contain additional language and concepts that are not alleged to be false advertising[,]" such as references to "fast recovery, the use of bioceramic powder, and the product's functionality[,]" and, therefore, "[a]ssuming a finding of liability, it is appropriate to account for the contribution of such language relative to the alleged false advertising."  ECF 262-3, ¶ 72.  The Court finds that, in calculating damages, Mr. Schmitt is qualified to opine on factors that can appropriately be considered as part of the disgorgement analysis; contrary to MET's argument, he did not opine "on the impact that the advertising at issue had on sales of particular products[,]"

particularly because he did not purport to calculate the amount of profits attributable to the effect of advertising that is not alleged to be false.[3] ECF 262, p. 3. *See, e.g.*, *Newborn Bros. Co. v. Albion Eng'g Co.*, No. 12-2999, 2023 WL 8714264, at *5 (D.N.J. Dec. 18, 2023) (allowing expert's testimony on potential profit disgorgement, in which expert identified sales subject to disgorgement and then, based on certain assumptions, estimated the profits to be disgorged therefrom); *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 793 (N.D. Tex. 2013) ("Experts are permitted to assume the fact of liability and opine about the *extent* of damages." (emphasis added)).

To the extent that MET is arguing that Mr. Schmitt offers inappropriate testimony on causation (*e.g.*, whether the alleged false advertising caused the claimed damages), this is a bit of a red herring. As Mr. Schmitt stated in his report and deposition testimony, his analysis was based on "an assumption that there will be a finding of liability" and his understanding that, while "the damages expert is not necessarily opining as to the liability of the alleged act, [the damages expert] cannot simply calculate damages that are untethered to the act." ECF 262-3, ¶ 7; ECF 262-4, 38:1-21. *See Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 15-512, 2017 WL 1319553, at *6 (E.D. Tex. Apr. 10, 2017) (allowing a damages expert in a false advertising case to testify only about damages while assuming liability); *Rhoads Indus., Inc.,* 2021 WL 2778562, at *30, 32 (noting that operating under an assumption of liability "is not tantamount to offering an opinion as to causation" and finding that

---

[3] MET further argues that Mr. Schmitt has not "offered an appropriate methodology" for his opinion that it is appropriate to account for the contribution of advertising that is not false. ECF 262, p. 16. However, Mr. Schmitt is not purporting to calculate the amount of profits attributable to the effect of advertising that is not alleged to be false. His statement reflects the principle that "[t]he infringer has the burden to isolate the profits which are attributable" to the infringement—and it isn't an opinion about the impact of Under Armour's advertising on its sales. *Am. Eagle Outfitters, Inc. v. Walmart, Inc.*, No. 20-00412, 2023 WL 1778786, at *3 (W.D. Pa. Feb. 6, 2023) (Horan, J.) (cleaned up).

the damages expert did not purport to offer opinions about causation when he is "proffered merely as a financial expert whose opinions necessarily rest on assumptions of causation and liability").

MET further argues that Mr. Schmitt's statement about the impact of Under Armour's advertisements beyond the alleged false statement is an impermissible legal conclusion. ECF 287, p. 5. While an expert "cannot usurp the role of the judge or the jury[,]" an expert's opinion "may be relevant to the factual aspects of the analysis leading to [a] legal conclusion." *Liqwd, Inc. v. L'Oreal USA, Inc.,* No. 17-14, 2019 WL 8014103, at *2 (D. Del. June 25, 2019). The Court finds that Mr. Schmitt's damages opinion "does not attempt to define the law applicable to the case[.]" *PNC Fin. Servs. Grp., Inc.*, 2024 WL 3691607, at *14. Rather, the conclusions he drew in his report—such as the propriety of accounting for the effect of "positive" advertising when assessing profits for disgorgement—were based on his apportionment analysis under the Lanham Act. *See id.* (finding that damages expert's disgorgement analysis did not attempt to define the law, because the Lanham Act "clearly allows for consideration of revenue and costs and allocates the burden of each party as to them[,]" the expert testified that she was merely opining on "how economically one would calculate damages if the goal is to estimate the amount of profit that the defendant earned due to the alleged misconduct[,]" and her opinion "factor[ed] in the costs that defendants are allowed to deduct under the Lanham Act" (cleaned up)). Mr. Schmitt merely opined that the disgorgement calculation can be further reduced by the profits that are not attributable to the alleged false advertising. This falls into the category of "facts leading to a legal analysis" and not a "legal conclusion."[4]

---

[4] Indeed, without any predicate causation assumptions, Mr. Schmitt's report would be deficient. As Mr. Schmitt acknowledged at his deposition, in calculating damages, and even assuming a finding of liability, the expert must still "ensure that the damages flow from the alleged wrongful conduct that gave rise to the damages." ECF 262-4, 37:15-25. *See also id.* at 180:12-16 ("A damages expert needs to explain what

*Analysis of Mr. Wrobel's "reasonable royalty" calculation*. MET argues that Mr. Schmitt inappropriately opined on "reasons as to why Under Armour would or would not enter into a contract with MET." ECF 262, p. 8. But the Court reads Mr. Schmitt's report differently. Mr. Schmitt instead opined that Mr. Wrobel's "reasonably royalty" calculation was speculative because of his assumption that, but for the alleged misconduct, Under Armour would have entered into an agreement with MET instead of Hologenix. ECF 262-3, ¶ 80. Mr. Schmitt disputed this assumption by citing to the record and noting "a number of factors that influenced [Under Armour's] decision to switch from" MET to Hologenix "that are independent of the alleged false advertising or other alleged wrongful conduct." *Id.*, ¶ 81.

The Court finds that, in rebutting Mr. Wrobel's expert report, Mr. Schmitt made permissible assumptions that are "reasonably based on the evidence in the record," and any weaknesses in the facts and assumptions underlying Mr. Schmitt's opinion can be explored on cross-examination. *Brill*, 540 F. Supp. 2d at 570; *see also TAKTL, LLC v. IWR, N. Am., LLC,* No. 18-1546, 2024 WL 4415194, at *4 (W.D. Pa. Oct. 4, 2024) (Cercone, J.) (challenges to the data and assumptions underlying damages expert's calculations did not warrant excluding his testimony, where it was sufficiently premised on his knowledge, experience, and facts in the record); *Rhoads Indus., Inc.*, 2021 WL 2778562, at *29 (permissible for a rebuttal expert to review opposing party's expert reports and apply "his experience and training to opine as to

---

the damages are, why they are appropriate, and how they're connected to the claim. Otherwise, what expertise are you providing?"); *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, No. 13-2451, 2016 WL 5496340, at *9 (D. Minn. Sept. 28, 2016) (noting that damages expert's rebuttal opinions on apportionment of profits are presumptively admissible and allowing expert to testify on his apportionment analysis, subject to appropriate objections at trial should his testimony venture into legal analysis, including any statements characterizing opposing party expert's analysis as "incomplete" in terms of its legal burden).

whether those reports are sound").

## II. Mr. Schmitt may use the full absorption method to calculate costs, but the Court will hold in abeyance its decision on the relief from royalty method.

### A.   Full absorption method.

To determine the profits available for disgorgement, Mr. Schmitt applied the full absorption method, which "deducts the costs that assist in the production, distribution or sale of the products at issue, irrespective of whether or not such costs are considered fixed or variable."  ECF 262-3, ¶ 55.  Based on a review of Under Armour's financial reports and a discussion with an Under Armour employee, he concluded that certain costs included in Under Armour's selling, general, and administrative expenses contributed to the sales of the Recover products at issue, and deducted these costs from the revenue on Recover products.  *Id.*, ¶¶ 59-65.

MET argues that Mr. Schmitt's use of the full absorption method is inappropriate because Under Armour would have incurred much of those fixed costs without selling the infringing product, and so the method fails to show that the costs and profits excluded from the disgorgement analysis are not attributable to the infringing product.  ECF 262, pp. 13-14.

The Court will not exclude Mr. Schmitt's testimony applying the full absorption method.  Generally, in the context of trademark infringement cases, courts have used two methods for apportioning costs: the incremental approach, "under which only direct costs of production are deducted," and the full absorption approach, "under which overhead costs are apportioned to production of the infringing item."

*McCarthy on Trademarks and Unfair Competition* § 30:68 (5th ed. 2024) (collecting cases).

Courts within the Third Circuit have permitted the deduction of overhead costs in infringement cases, where appropriate to do so.[5] *See Kars 4 Kids Inc. v. American Can!,* Nos. 14-7770, 16-4232, 2020 WL 1550804, at *7-8 (D. N.J. Apr. 1, 2020) (in deciding disgorgement of profits following a finding of liability in trademark infringement cases, adopting full absorption method over incremental approach because the full absorption method better reflected the infringing revenues and expenses—which were derived from a single source—and the overhead expenses were likely a major factor in generating the infringing revenue), *vacated in part on other grounds*, 8 F.4th 209 (3d Cir. 2021); *A & H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 967 F. Supp. 1457, 1463 (E.D. Pa. 1997) (at bench trial, rejecting calculation of profits using full absorption method because the volume of sales of infringing product as a percentage of total sales was insignificant); *Allen-Myland, Inc. v. Int'l Bus. Machines Corp.*, 770 F. Supp. 1014, 1024 (E.D. Pa. 1991) (recognizing, in calculating copyright infringement damages, that overhead costs that assist in the production of

---

[5] MET cites to *Century Distilling Co. v. Cont'l Distilling Corp.*, 205 F.2d 140 (3d Cir. 1953) for the proposition that courts have "called [the full absorption] method into question and opined about its inherent risks[.]" ECF 262, p. 12. However, in *Century Distilling Co.*, the Third Circuit did not rule out the use of the full absorption method in infringement cases. Rather, it held that the special master did not err in refusing to deduct overhead costs in the computation of profits on the infringing products. *Century Distilling Co.*, 205 F.2d at 147. The Third Circuit recognized that the method of deducting overhead costs is used in many accountings, *e.g.*, to determine an infringer's profits. *Id.* at 147 & n.18.

the infringement should be taken into account, and which overhead expenses should be deducted is a factual determination to be made by the special master).[6]

MET is correct that, for a disgorgement analysis under the Lanham Act, the infringer "bears the burden of proving all elements of cost or deduction" and "has the burden to isolate the profits which are attributable to" the infringement. *PNC Fin. Servs. Grp., Inc.*, 2024 WL 3691607, at *12 (cleaned up); *see also Rexall Sundown, Inc. v. Perrigo Co.*, 707 F. Supp. 2d 357, 363 (E.D.N.Y. 2010) (in Lanham Act false advertising case, "[t]he defendant must establish any deductions, including costs and any apportionment for sales that were not due to the allegedly false or misleading statements").

However, MET's criticisms of Mr. Schmitt's application of the full absorption method go to the weight of his testimony rather than admissibility, and are more appropriately addressed through cross-examination of Mr. Schmitt about his decision to use the full absorption method (including his decision to include certain categories of expenses).[7] *See Maker's Mark Distillery, PBC v. Spalding Grp., Inc.*, No. 319-14, 2024 WL 947475, at *6 (W.D. Ky. Mar. 5, 2024) (expert testimony using the

---

[6] Generally, courts that use the full absorption method require that there be some sort of connection between the overhead expenses and the infringing sales. *See, e.g.*, *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 656 (S.D.N.Y. 2007) ("In assessing the defendant's net profit from the infringing sales, courts are to use the 'full absorption' method, but only if the defendant proves the connection between a general expense such as overhead and the infringing sales.").

[7] Having addressed MET's objections to Mr. Schmitt's use of the full absorption method, the Court finds no issues of fit or reliability with his expert testimony on the full absorption method. His testimony is supported by good grounds demonstrating reliability, as the method appears to be a generally accepted method of apportioning costs (which Mr. Schmitt is qualified to opine on) and has been used in infringement cases. Mr. Schmitt also sufficiently explains the basis underlying his decision to include certain categories of expenses in his calculations, *i.e.*, his discussions with an Under Armour employee and his review of a detailed summary of Under Armour's income statements. *See* ECF 262-3, ¶¶ 63-64. So his testimony fits the facts of this case.

incremental approach is not excluded on *Daubert* motion, because the Sixth Circuit has not adopted either the full absorption approach or the incremental approach, which approach is preferable depends on the facts of each case, and any objections to expert's methodology can be addressed through cross-examination); *Canon U.S.A., Inc. v. F&E Trading LLC*, No. 156015, 2023 WL 7001358, at *8-9 (E.D.N.Y. July 28, 2023) (on *Daubert* motion, allowing defendants' expert to use full absorption method to determine profits, and holding that, for *Daubert* purposes, "both the full absorption and the incremental accounting methods generally fit the facts of this case"); *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, No. 13-2451, 2016 WL 5496340, at *10 (D. Minn. Sept. 28, 2016) (declining to rule, on *Daubert* motion, whether damages expert's inclusion of fixed or indirect costs in his deduction analysis are appropriate and finding that the issue of disgorgement damages and what costs can be deducted is more appropriately addressed after trial).

### B. Relief from royalty method.

To value the contribution of Under Armour's intellectual property to the sale of its products, Mr. Schmitt used the relief from royalty method. Under this method, he applied a "market-based royalty for the subject intellectual property at issue as a reasonable proxy for the profit or value it contributes to the sale of products that use the intellectual property." ECF 262-3, ¶ 73. To establish what the applicable royalty rate would be for the Under Armour brand, he looked at one instance in which Under Armour licensed its name and logo to an apparel distributor, through which Under Armour received a 14% royalty of the net revenue of apparel sold with its name or logo. *Id.*, ¶ 74. He then reduced Under Armour's profits from the sale of Recover products by 14%, to reflect the royalty that Under Armour "was relieved from paying by virtue of owning its brand." *Id.*

MET argues that Mr. Schmitt's use of the relief from royalty method was improper because a hypothetical royalty amount isn't a proper deduction in

evaluating Lanham Act damages (*e.g.*, the "value of the brand" is not a legitimate deduction from profits because Under Armour did not pay to license its brand, and therefore, there is no "cost" to deduct). ECF 262, pp. 15-16; ECF 287, p. 9.[8]  Under Armour contends that the relief from royalty method is "a valuation technique that recognizes that the owner of intellectual property…generates a profit from use of that property without paying a license fee or royalty" and that the method is "often expressed as a percentage of revenue that the subject entity that owns or operates the intangible asset would be obligated to pay to a hypothetical third-party licensor for the use of that intangible asset." ECF 275, p. 9 (cleaned up).

At this juncture, there are open issues regarding Mr. Schmitt's use of the relief from royalty method, which require further explanation.  While Under Armour argues that "courts accept the apportionment of profits for contributions made by a defendant in generating those profits[,]" it has not sufficiently established that the relief from royalty method has been subject to peer review, or that the relief from royalty method is a generally accepted method for calculating proper costs or deductions in the Lanham Act context. ECF 275, p. 10. Under Armour has not cited to any cases applying the relief from royalty method to reduce the disgorgement of profits under the Lanham Act (or any cases recognizing the value of a business's brand or intellectual property as a proper deduction under the Lanham Act

---

[8] MET also takes issue with Mr. Schmitt's failure to perform any analysis that "would compare [the] purported brand value to the impact of the false advertisements at issue[.]" ECF 262, p. 15.  However, this argument appears to miss Mr. Schmitt's purpose for using the relief from royalty method. Mr. Schmitt's "objective was not to compare how much [of sales of Recover products] was attributable to the brand versus the false advertising." ECF 275-1, 152:16-163:12. Mr. Schmitt instead used the relief from royalty method to "reduce the profit that is calculated to recognize the value contributed by Under Armour's brand to the sale"—so this deduction applies for all sales, irrespective of any false advertising, and without any consideration for apportionment of the profit due to attributes that are unrelated to false advertising. *Id.* at 154:2-155:14; ECF 262-4, 175:22-25.

disgorgement analysis), and the Court has not found any such cases.

While the novelty of Mr. Schmitt's methodology—to the extent that it is novel—is "not a *per se* reason for exclusion," the Court does not have a basis to decide whether Mr. Schmitt's methodology is sufficiently reliable. *PNC Fin. Servs. Grp., Inc.*, 2024 WL 3691607, at *10-11 (excluding expert opinion that used a novel method of calculating trademark infringement damages, because it was "not demonstrably tethered to a reliable methodology that fits this case and lack[ed] support beyond [the expert's] faith in his own calculations," and because "this method has never been used to calculate trademark infringement damages in any case, has no professional or academic recognition, and has not been the subject of any level of peer review"); *see also Am. Eagle Outfitters, Inc. v. Walmart, Inc.*, No. 20-00412, 2023 WL 1778786, at *5 (W.D. Pa. Feb. 6, 2023) (Horan, J.) (damages expert's theory of profit disgorgement was unreliable and did not fit the facts of the case because his methodology did not consist of a testable hypothesis; was not subject to peer review, generally accepted, or put to nonjudicial uses; relied on outdated survey data and untested proxies; and wouldn't assist the court in determining the disgorgement of profits).

Accordingly, at this time, the Court declines to rule on whether Mr. Schmitt's testimony applying the relief from royalty method should be excluded. The Court intends to hold an *in limine* hearing—either at the final pre-trial conference or at trial, with Mr. Schmitt in appearance—as to the relief from royalty methodology and its reliability. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 152-53 (3d Cir. 2000) (suggesting *in limine* hearing when the reasons and foundations for an expert's opinion are inadequately or confusingly explicated, such that the district court has no way of determining how the expert arrived at his conclusions).

### III. The Court won't exclude Mr. Schmitt's report and testimony under Rule 403.

Lastly, MET argues that, based on the purported deficiencies set forth above,

Mr. Schmitt's report and testimony present a serious risk of confusing the jury and prejudicing MET. ECF 262, at pp. 16-17 (citing Fed. R. Evid. 403).

Balancing the probative value against the prejudice, the Court finds that the probative value of Mr. Schmitt's expert opinions (on which Under Armour relies for its damages analysis) is high, and there is no danger of unfair prejudice. *See United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) ("As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process–competing expert testimony and active cross–examination– rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." (cleaned up)). To the extent there might be any confusion or potential prejudice, the Court is open to curative jury instructions to assist the jury. *See In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2015 WL 5767415, at *20 (E.D. Pa. July 29, 2015) ("[T]o reduce any potential prejudice to the defendants, the jury may be instructed at trial regarding the proper limits of [the] expert testimony.").

## CONCLUSION

For the reasons discussed above, the Court will leave open the issue of whether Mr. Schmitt's application of the relief from royalty methodology is admissible under Rule 702, but will deny MET's motion to exclude Mr. Schmitt's expert report and testimony in all other respects. ECF 261. An appropriate order follows.

DATED: January 13, 2025                             BY THE COURT:

                                                                                 /s/ *J. Nicholas Ranjan*
                                                                                 United States District Judge